# ILLINOIS CENTRAL RAILROAD COMPANY *v.* DECATUR.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 56. Argued November 22, 23, 1892. — Decided January 9, 1893.

The provisions in Section 22 of the act incorporating the Illinois Central Railroad Company, (Private Laws, Ill. 1851, 61, 72,) exempting it from taxation, do not exempt it from the payment of a municipal assessment upon its land within a municipality in the State, laid for the purpose of grading and paving a street therein.

An exemption from taxation is to be taken as an exemption from the burden of ordinary taxes, and does not relieve from the obligation to pay special assessments, imposed to pay the cost of local improvements, and charged upon contiguous property upon the theory that it is benefited thereby.

On February 10, 1851, an act was passed by the general assembly of Illinois, incorporating the Illinois Central Railroad Company. Private Laws, Ill. 1851, 61. By it the company was made the beneficiary of the land grant from Congress to the State of September 20, 1850. 9 Stat. 466. The 22d section (page 72) was in these words:

"Sec. 22. The lands selected under said act of Congress, and hereby authorized to be conveyed, shall be exempt from all taxation under the laws of this State until sold and conveyed by said corporation or trustees, and the other stock, property and effects of said company shall be in like manner exempt from taxation for the term of six years from the passage of this act. After the expiration of six years, the stock, property and assets belonging to said company shall be listed by the president, secretary or other proper officer, with the Auditor of State, and an annual tax for state purposes shall be assessed by the auditor upon all the property and assets of every name, kind and description belonging to said corporation. Whenever the taxes levied for state purposes shall exceed three-fourths of one per centum per annum, such excess shall be deducted from the gross proceeds or income

herein required to be paid by said corporation to the State, and the said corporation is hereby exempted from all taxation of every kind except as herein provided for. The revenue arising from said taxation, and the said five per cent of gross or total proceeds, receipts or income aforesaid, shall be paid into the State Treasury, in money, and applied to the payment of interest-paying state indebtedness, until the extinction thereof: *Provided,* In case the five per cent provided to be paid into the state treasury, and the state taxes to be paid by the corporation, do not amount to seven per cent of the gross or total proceeds, receipts or income, then the said company shall pay into the state treasury the difference, so as to make the whole amount paid equal at least to seven per cent of the gross receipts of said corporation."

By section 27 it was provided that " this act shall be deemed a public act, and shall be favorably construed for all purposes therein expressed and declared in all courts and places whatsoever."

In 1887, proceedings were had in the county court of Macon County, to defray the cost of grading and paving a certain street in the city of Decatur. Under those proceedings two separate parcels of land belonging to the Illinois Central Railroad Company, and forming part of its right of way, were assessed to the amount of $262.70. The company objected to this assessment on the ground that by its charter it was exempted from all taxation of every kind except as therein provided for, and that there was no provision permitting such an assessment. This objection was overruled, and a judgment entered by the county court against the two parcels of land. Exception was taken, and an appeal allowed to the Supreme Court of the State. In that court the ruling of the county court was sustained, and the judgment affirmed, and the case is now brought here for review by writ of error.

*Mr. Benjamin F. Ayer* for plaintiff in error.

The terms of the contract between the State and the railroad company are explicit. Immunity from taxation was not

granted to the company; but a certain rate and method of taxation, in the nature of a commutation, was agreed upon, and the revenues thus accruing to the State were to be received in lieu of all other taxes. The words are: "And the said corporation is hereby exempted from all taxation of every kind, except as herein provided for." The stipulation has all the elements of a legal contract. There is not only consent on the part of the State, but the consideration to be received by the State was largely in excess of the customary taxes, and therefore more than a fair equivalent for the exemption promised to the company.

The constitutional power of the legislature to make the contract is undoubted. That was authoritatively settled by the Supreme Court of the State in 1855, and the decision was affirmed in 1863. *Ill. Cent. Railroad* v. *McLean County*, 17 Illinois, 291; *Neustadt* v. *Ill. Cent. Railroad*, 31 Illinois, 484.

The taxes in question were assessed upon portions of the right of way of the company, that is, upon component parts of the railroad itself. It is not pretended that they are taxes provided for in the charter. If not, how can they be enforced without a plain violation of the contract?

The decision of the state court did not proceed upon any denial of the binding force of the contract, but upon an interpretation of the contract, which, it is respectfully submitted, is manifestly contrary to its plain import, and upon certain assumptions, which, with due deference, we say are wholly gratuitous. The taxes in question, it is said, are special taxes, levied on contiguous property for a local improvement, and cannot be regarded as burdens, because the property is supposed to receive benefits equal to the amount of the tax. Therefore, the court said, this is not an ordinary tax, and is not within the exemption clause of the charter.

It is quite clear, however, that the power to levy such local taxes is referable to and can be sustained only as an exercise of the power of taxation inherent in the State. It matters not how they are called — whether we style them "ordinary" taxes or extraordinary, general or special — or whether they are levied for one public purpose or another; they are not

the less taxes; and if they are taxes not provided for in the charter, it is respectfully submitted that they cannot be enforced without impairing the obligation of the contract.

The exemption guaranteed in the charter, is not an exemption from ordinary taxes only, but from " all taxation of every kind except as herein provided for." There is this saving clause — " except as herein provided for," — and there is no other. These words necessarily exclude all other exceptions. The right to impose any other tax than those thus specially provided for is renounced and inhibited.

It is, no doubt, an established rule, that legislative contracts for exemption from taxation shall be construed with strictness, or, in other words, that they shall not be enlarged by construction. But this is a contract for commutation, based on full consideration, and it is accompanied by an express declaration, that the act which creates the contract "shall be favorably construed for all purposes therein expressed or declared, in all courts and places whatsoever."

It may well be doubted whether the rule of strict construction should be applied with the same severity to such a contract as to ordinary legislative grants.

Be that as it may, it is an inflexible rule in the construction of all statutes, both private and public, that the legislature must be understood to have intended what is plainly expressed. The same rule applies to the interpretation of contracts; and in this respect there is no difference between the contract of a State and the contract of a natural person. *Tennessee* v. *Whitworth*, 117 U. S. 129; *Home of the Friendless* v. *Rouse*, 8 Wall. 430; *Farrington* v. *Tennessee*, 95 U.S. 679.

It is assumed in the opinion of the state court, that the property of the plaintiff in error is not protected by the contract from " special assessments" for street improvements; and this is followed by the further assumption, that special taxes for street improvements are in all essential respects the same as " special assessments."

The constitution of Illinois in force from 1848 to 1870, contained the following clause in relation to municipal taxation: " The corporate authorities of counties, townships, school dis-

tricts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same." Constitution of 1848, Art. IX, Sec. 5.

Special assessments in proportion to benefits, had been sustained by the courts on the theory that they were not taxes, and therefore not within the purview of the provisions of the constitution limiting the exercise of the taxing power. Taxes, it was said, are burdens put upon persons or property for public uses. Assessments laid on real estate for a local improvement precisely in the ratio of the advantages accruing to the property, are not burdens, but only a compensation or equivalent for the increased value of the property derived from the improvement. They had, it was held, none of the distinctive features of a tax, and were not therefore within the operation of the constitutional provision above mentioned, which required that taxes levied for corporate purposes should be uniform in respect to persons and property within the jurisdiction of the body imposing the same. *Canal Trustees* v. *Chicago*, 12 Illinois, 403; *Peoria* v. *Kidder*, 26 Illinois, 351.

Assessments levied under the act of 1863 were not apportioned according to benefits, and the question whether they could be discriminated from taxes, or reconciled in any way with the restrictions of the constitution, came before the Supreme Court for decision soon after the passage of the act. It was regarded by the court "as a very plain case," and the decision was against their validity. *City of Chicago* v. *Larned*, 34 Illinois, 203.

There has been no decision of the Illinois Court at variance with the doctrine in *City of Chicago* v. *Larned.* On the contrary the rulings there made have been approved and followed in all the subsequent cases relating to the same subject. We mention only a few of them. *Ottawa* v. *Spencer*, 40 Illinois, 211; *Chicago* v. *Baer*, 41 Illinois, 306; *Wright* v. *Chicago*, 46 Illinois, 44; *St. John* v. *East St. Louis*, 50 Illinois, 92.

The decisions in the very cases referred to in the judgment of the state court now under review, as establishing the doc-

trine that "exemption from taxation does not exempt from special assessments," proceed upon the theory that special assessments are not taxes, because they are laid in proportion to benefits. Not one of them lends the faintest color to the idea that a special assessment can be anything but a tax, unless there has been an apportionment of benefits to the burden.

The corporate authorities of the city of Decatur, for reasons satisfactory to themselves, determined to adopt in this case the method of special taxation. In the ordinance directing the improvement to be made, it was expressly provided that the costs should be defrayed "by the special taxation of the lots, parts of lots and parcels of land abutting upon said street on both sides thereof along the line of said improvement."

The taxes were assessed as directed by the ordinance, and no inquiry was made in regard to benefits, or even contemplated. Indeed, it is thoroughly settled by the decisions of the Supreme Court of Illinois that no such inquiry is necessary, or even permissible. *White* v. *People ex rel.*, 94 Illinois, 604; *Enos* v. *Springfield*, 113 Illinois, 65; *Galesburg* v. *Searles*, 114 Illinois, 217; *Sterling* v. *Galt*, 117 Illinois, 11; *Springfield* v. *Green*, 120 Illinois, 269.

These references will suffice to show the nature of the assessments attempted to be levied in this case upon the property of the plaintiff in error. They are plainly taxes. They admit of no other classification. They have been levied without reference to any actual benefits which the property taxed will derive from the proposed improvement, and therefore lack the essential and indispensable element which distinguishes a "special assessment" from a tax, as those terms are understood in the laws of Illinois.

To say that the imposition of such taxes is not taxation, is simply a contradiction in terms. The constitution of the State calls it taxation. The statute under which this proceeding is prosecuted calls it taxation. The Supreme Court of Illinois, in numerous decisions, calls it the same; and the opinion of the same court in the present case admits it to be a kind of

taxation, which is conceded not to be provided for in the railroad company's charter.

In several well considered cases in other jurisdictions, where assessments on property specially benefited have been authorized by statute for a street improvement, it has been held as matter of law, that the roadbed or "right of way" of a railroad company derives no special benefit from the paving of a street which crosses it, and for that reason is not subject to assessment. *Philadelphia* v. *Phil. Wilm. & Balt. Railroad Co.*, 33 Penn. St. 41; *Junction Railroad Co.* v. *Philadelphia*, 88 Penn. St. 424; *New York & New Haven Railroad Co.* v. *New Haven*, 42 Connecticut, 279; *State of New Jersey* v. *Elizabeth*, 8 Vroom, (37 N. J. Law,) 330.

There is no warrant for the assumption that special taxes, assessed under the constitution and laws of Illinois, are not burdens. Whether the property on which they are imposed is specially benefited or not is held to be a wholly immaterial question. They differ, therefore, from other taxes only in the purpose for which they are levied. There is nothing in this distinguishing feature which will enable the State, or its agencies, to evade the plain language of the contract.

Many of the reported cases relate to exemptions found in a tax law for the raising of revenue for general purposes; and it has been properly held that an exemption clause in such a law, expressed in general terms has reference, like all the other provisions of the act, only to taxes of a general public character. No different conclusion could be reached* without violating one of the most familiar rules of statutory construction.

There is another class of cases in which a distinction has been made between ordinary taxation in the usual mode for general purposes, and special assessments for local improvements apportioned upon property specially benefited in proportion to, and not in excess of, the special benefits received. It has been held in some jurisdictions, that the latter are not burdens, and therefore not taxes, within the meaning of that word as sometimes used in a state constitution or statute. But these cases afford no sanction to the anomalous proposi-

tion, that taxes assessed arbitrarily on property without regard to special benefits, do not constitute taxation. There is perhaps no case which better illustrates the position we take on the point than *McGee* v. *Mathis*, 4 Wall. 143.

And the general principle which underlies the whole question is that when the legislature, acting on a subject entirely within its competency, has granted a complete exemption like the one in this case, it is not within the province of the courts to limit it. *Harvard College* v. *Boston*, 104 Mass. 470; *Brightman* v. *Kirner*, 22 Wisconsin, 54; *Southern Railroad Co.* v. *Jackson*, 38 Mississippi, 334; *New Jersey* v. *Newark*, 3 Dutcher, (27 N. J. Law,) 185; *Erie* v. *First Universalist Church*, 105 Penn. St. 278; *Olive Cemetery Co.* v. *Philadelphia*, 93 Penn. St. 129; *Richmond* v. *Richmond and Danville Railroad*, 21 Gratt. 604.

*Mr. Hugh Crea* and *Mr. E. S. McDonald* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The single question in this case is, whether this special tax for a local improvement is within the exemption from taxation granted to the railroad company by section 22 of the act of 1851.

Between taxes, or general taxes as they are sometimes called by way of distinction, which are the exactions placed upon the citizen for the support of the government, paid to the State as a State, the consideration of which is protection by the State, and special taxes or special assessments, which are imposed upon property within a limited area for the payment for a local improvement supposed to enhance the value of all property within that area, there is a broad and clear line of distinction, although both of them are properly called taxes, and the proceedings for their collection are by the same officers and by substantially similar methods. Taxes proper, or general taxes, proceed upon the theory that the existence

of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizen that general benefit which results from protection to his person and property, and the promotion of those various schemes which have for their object the welfare of all. "The public revenues are a portion that each subject gives of his property in order to secure or enjoy the remainder." Montesq. Spirit of the Laws, book 13, c. 1; *Loan Association* v. *Topeka*, 20 Wall. 655, 664; Opinions of Judges, 58 Maine, 591; *Hanson* v. *Vernon*, 27 Iowa, 28, 47; *Judd* v. *Driver*, 1 Kansas, 455, 462; *Philadelphia Association* v. *Wood*, 39 Penn. St. 73, 82; *Exchange Bank* v. *Hines*, 3 Ohio St. 1, 10.

On the other hand, special assessments or special taxes proceed upon the theory that when a local improvement enhances the value of neighboring property that property should pay for the improvement. In *Wright* v. *Boston*, 9 Cush. 233, 241, Chief Justice Shaw said: "When certain persons are so placed as to have a common interest among themselves, but in common with the rest of the community, laws may justly be made, providing that, under suitable and equitable regulations, those common interests shall be so managed, that those who enjoy the benefits shall equally bear the burden." In *McGonigle* v. *Allegheny City*, 44 Penn. St. 118, 121, is this declaration: "All these municipal taxes for improvement of streets, rest, for their final reason, upon the enhancement of private properties." In *Litchfield* v. *Vernon*, 41 N. Y. 123, 133, it was stated that the principle is, "that the territory subjected thereto would be benefited by the work and change in question." In Cooley on Taxation (page 416, c. 20, § 1) the matter is thus discussed by the author: "Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for state and municipal purposes, and governed by principles that do not apply generally. The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises

nothing to the persons taxed beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby, their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay. This is the idea that underlies all these levies. As in the case of all other taxation, it may sometimes happen that the expenditure will fail to realize the expectation on which the levy is made; and it may thus appear that a special assessment has been laid when justice would have required the levy of a general tax; but the liability of a principle to erroneous or defective application cannot demonstrate the unsoundness of the principle itself, and that which supports special assessments is believed to be firmly based in reason and justice."

These distinctions have been recognized and stated by the courts of almost every State in the Union, and a collection of the cases may be found in any of the leading text-books on taxation. Founded on this distinction is a rule of very general acceptance — that an exemption from taxation is to be taken as an exemption simply from the burden of ordinary taxes, taxes proper, and does not relieve from the obligation to pay special assessments. Thus in an early case, *In the Matter of the Mayor &c. of New York,* 11 Johns. 77, 80, under a statute which provided that no church or place of public worship "should be taxed by any law of this State," the court observed: "The word '*taxes*' means burdens, charges or impositions put or set upon persons or property for public uses,

and this is the definition which Lord *Coke* gives to the word *talliage*, (2 Inst. 532,) and Lord *Holt*, in Carth. 438, gives the same definition, in substance, of the word *tax*. The legislature intended, by that exemption, to relieve religious and literary institutions from these public burdens, and the same exemption was extended to the real estate of any minister, not exceeding in value fifteen hundred dollars. But to pay for the opening of a street, in a *ratio* to the 'benefit or advantage' derived from it, is no burden. It is no talliage or tax within the meaning of the exemption, and has no claim upon the public benevolence. Why should not the real estate of a minister, as well as of other persons, pay for such an improvement in proportion as it is benefited? There is no inconvenience or hardship in it, and the maxim of law that *qui sentit commodum debet sentire onus*, is perfectly consistent with the interests and dictates of science and religion."

This rule of exemption has been applied in cases where the language granting the exemption has been broad and comprehensive. Thus in *Baltimore* v. *Greenmount Cemetery*, 7 Maryland, 517, the exemption was from any tax or public imposition whatever," and it was held not to relieve from the obligation to pay for the paving of the street in front. In *Buffalo City Cemetery* v. *Buffalo*, 46 N. Y. 506, the exemption was from "all public taxes, rates and assessments," and it was held not to discharge from liability for a paving assessment. A like rule was held in *Patterson* v. *Society for Manufactures*, 24 N. J. Law. (4 Zabr.) 385, where the exemption was from "taxes, charges and impositions." And in *Bridgeport* v. *New York & New Haven Railroad*, 36 Connecticut, 255, the railroad company was held liable for a street assessment, although it paid a sum of money to the State which, by its charter, was to be "in lieu of all other taxes."

Indeed, the rule has been so frequently enforced that, as a general proposition, it may be considered as thoroughly established in this country. It is unnecessary to refer to the cases generally. It may be well, however, to notice those from Illinois. In *Canal Trustees* v. *Chicago*, 12 Illinois, 403, 406, decided in the lower court at May term, 1849, and before the

passage of the act creating the contract relied upon, and by the Supreme Court at the June term, 1851, the exemption was "from taxation of every description by and under the laws of this State," and it was held that that did not include an assessment made to defray the expense of opening a street. It was observed: "In our opinion the exemption must be held to apply only to taxes levied for State, county and municipal purposes.  A tax is imposed for some general or public object. . . . The assessment in question has none of the distinctive features of a tax.  It is imposed for a special purpose, and not for a general or public object."  See also *Chicago* v. *Colby*, 20 Illinois, 614; *Peoria* v. *Kidder*, 26 Illinois, 351; *Pleasant* v. *Kost*, 29 Illinois, 490, 494; *Illinois Central Railroad* v. *East Lake Fork Drainage District*, 129 Illinois, 417.  Nor is this a mere arbitrary distinction created by the courts, but one resting on strong and obvious reasons.  A grant of exemption is never to be considered as a mere gratuity — a simple gift from the legislature.  No such intent to throw away the revenues of the State, or to create arbitrary discriminations between the holders of property, can be imputed.  A consideration is presumed to exist.  The recipient of the exemption may be supposed to be doing part of the work which the State would otherwise be under obligations to do.  A college, or an academy, furnishes education to the young, which it is a part of the State's duty to furnish.  The State is bound to provide highways for its citizens, and a railroad company in part discharges that obligation.  Or the recipient may be doing a work which adds to the material prosperity or elevates the moral character of the people; manufactories have been exempted, but only in the belief that thereby large industries will be created and the material prosperity increased; churches and charitable institutions, because they tend to a better order of society.  Or it may be that a sum, in gross or annual instalments, is received in lieu of taxes.  But in every case there is the implied fact of some consideration passing for the grant of exemption.  But those considerations as a rule pass to the public generally, and do not work the enhancement of the value of any particular area of property.  So when the con-

sideration is received by the public as a whole, the exemption should be and ·is of that which otherwise would pass to such public, to wit, general taxes.

Another matter is this: In a general way it may be said that the probable amount of future taxes can· be estimated. While of course no mathematical certainty exists, yet there is a reasonable uniformity in the expenses of the government, so that there can be in advance an approximation of what is given when an exemption from taxation is granted, if only taxes proper are within the grant. ·But when you enter the domain of special assessments there is no basis for estimating in advance what may be the amount of such assessments. Who can tell what the growth of the population will be in the vicinity of the exempted property? Will there be only a little village or a large city? Will· the local improvements which the business interests of that vicinity demand be trifling in amount, or very large? What may be the improvements which the necessities of the ·case demand? Nothing can be more indefinite and uncertain than these matters; and it is not to be expected that the legislature would grant an exemption of such unknown magnitude with no corresponding return of· consideration therefor.

. And, again, as special assessments proceed upon the theory that the property charged therewith is enhanced in value by the improvement, the enhancement of value being the consideration for the charge, upon what principles of justice can one tract within the area of the property enhanced in value be released from sharing in the expense of such improvement? Is there ·any way in which it returns to the balance of the property within that area any equivalent for a release from a share in the burden? Whatever may be the supposed consideration to the public for an exemption from general taxation, does it return to the property within the·area any larger equivalent with the improvement than without it? If it confers a benefit upon the public, whether the general public or that near at hand, a benefit which justifies an exemption from taxation, does it confer any additional benefit upon the limited · area by reason of sharing in the enhanced value springing

from the improvement? Obviously not. The local improvement has no relation to or effect upon that which the exempted property gives to the public as consideration for its exemption; hence, there is manifest inequity in relieving it from a share of the cost of the improvement. So when the rule is laid down that the exemption from taxation only applies to taxes proper it is not a mere arbitrary rule, but one founded upon principles of natural justice.

But it is said that it is within the competency of the legislature, having full control over the matter of general taxation and special assessments, to exempt any particular property from the burden of both, and that it is not the province of the courts, when such entire exemption has been made, to attempt to limit or qualify it upon their own ideas of natural justice. Thus in the case of *Harvard College* v. *Boston*, 104 Mass. 470, an assessment for altering a street was held within the language of the college charter exempting the property "from all civil impositions, taxes and rates." See also the following authorities: *Brightman* v. *Kirner*, 22 Wisconsin, 54; *Southern Railroad* v. *Jackson*, 38 Mississippi, 334; *New Jersey* v. *Newark*, 3 Dutcher, (27 N. J. Law,) 185; *Erie* v. *First Universalist Church*, 105 Penn. St. 278; *Olive Cemetery Co.* v. *Philadelphia*, 93 Penn. St. 129; *Richmond* v. *Richmond & Danville Railroad*, 21 Gratt, 604. This is undoubtedly true. So we turn to the language employed in granting this exemption to see what the legislature intended, and we notice that by the charter certain sums are to be paid into the state treasury, in money, and applied to the payment of interest-paying state indebtedness until the extinction thereof, and it is in consideration of this payment that the corporation is exempted from all taxation of every kind. Inasmuch as the payment by the corporation is to be always made into the state treasury, and for a time to be applied only to a single state purpose, a very plausible argument might be made to the effect that all that was intended to be granted was an exemption from state taxes, leaving the property like other property, still subject to municipal taxation. That question, however, is not before us; and it has been held by the Supreme Court of Illinois, in

*Neustadt* v. *Illinois Central Railroad*, 31 Illinois, 484, and properly so in view of the provision in section 27 that the act " shall be favorably construed for all purposes therein expressed and declared," that the charter exemption extends to all general municipal taxation.

But can any intent be derived from the language of these exempting clauses to include within them special assessments? Obviously not; for out of the state treasury seldom, if ever, is money appropriated for merely local improvements. The rule is to charge them upon the property in the vicinity, and when the transaction between the parties, the State and the corporation, contemplates the payment into the state treasury of a sum in lieu of taxation, it must be held to contemplate a release, only as to such charges as would ordinarily find their way into the state treasury for legislative appropriation. So that, independently of the use of the word " taxation," which has under such circumstances received almost a uniform construction, the terms of the agreement between the State and corporation excluded special assessments, and included only those matters which are the ordinary equivalent of State taxation.

But, again, it is urged that whatever may be the rule obtaining in the courts of the States, this court has given a broader and more extended meaning to clauses exempting from taxation, and the case of *McGee* v. *Mathis*, 4 Wall. 143, is cited. But the case does not warrant the contention. The facts in that case were these: In 1850 the United States granted to the State of Arkansas all the swamp and overflowed government lands within its limits, on condition that the proceeds of the lands, or the lands themselves, should be applied as far as possible for reclaiming them by means of levees and drains. The State accepted the grant, and by an act of the legislature in 1851 provided for the sale of the lands. In the 14th section of this act it was provided that, " To encourage, by all just means, the progress and the completing of the reclaiming such lands, by offering inducements to purchasers and contractors to take up said lands, all said swamp and overflowed lands shall be exempt from taxation for the term of ten years,

or until they shall be reclaimed." In 1855 this section was repealed, but prior thereto McGee had become the owner of certain of these lands lying in Chicot County. In 1857 an act of the legislature, local in its nature, provided for the making of levees and drains in Chicot County, and authorized a special tax to meet the cost. This special tax was assessed upon the unreclaimed swamp lands of McGee as well as other lands, and the question was, whether this special tax impaired the contract of exemption provided by the 14th section of the act of 1851, and it was held that it did. The argument is thus stated by the Chief Justice, in delivering the opinion of the court, on page 157: "It was strenuously urged for the defendant that the exemption contemplated by the statute was exemption from general taxation, and not from special taxation for local improvements benefiting the land, such as the making of levees, and many authorities were cited in support of this view. The argument would have great force if the provision for exemption had been contained in a general tax law, or in a law in framing which the legislature might reasonably be supposed to have in view general taxation only. But the provision under consideration is found in a law providing for the construction of levees and drains, and devoting to that object funds supposed to be more than adequate, derived from the very lands exempted, and the exemption is for ten years or until reclaimed, and is offered as an inducement to take up the lands and thus furnish those funds. It is impossible to say that this exemption was not from taxation for the purpose of making these levees and drains as well as from taxation in general. Any other construction would ascribe to the legislature an intention to take the whole land for the purposes of the improvement, and then to load it with taxation for the same object in the hands of purchasers whom it had led to expect exemption from all taxation, at least until the land should be reclaimed."

In other words, the general rule which we have been considering was recognized, but its applicability was denied by the court, and properly so. In order to create a fund to reclaim these lands from overflow, the State sold them exempted

from taxation. To turn around after such sale and charge the cost of reclamation upon the same lands would nullify the purpose for which they were sold. It is precisely as though the State had sold a body of lands for the specific purpose of raising funds to build a state house, and, then, after the sale and receipt of the money, had turned around and charged the cost of building such state house upon the very lands sold. By the sale the land was once appropriated to a given purpose, and could not be burdened a second time for the same purpose. It would be practically a second appropriation, which nullified that created by the sale. There is nothing in this case, therefore, which announces a doctrine in conflict with that we have been considering, and which has been recognized in all the States.

But, finally, it is urged that if this exemption does not include special assessments, the constitution of Illinois of 1870 recognizes a distinction between special taxes and special assessments, and that in this case the charges are special taxes rather than special assessments, and therefore to be included within the exemption of the charter. Section 2 of article 9 of the constitution of 1848, which was in force at the time of the charter of the railroad company, is as follows: "The general assembly shall provide for levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to his or her property." Section 5 of the same article contained this as to local taxation: "The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same"; while in section 11 of article 3 was the ordinary provision that no property should be taken or applied to public use without just compensation. And under that constitution it was ruled, in the case of *Chicago v. Larned*, 34 Illinois, 203, that "an assessment for improvements made on the basis of the frontage of lots upon the street to be improved is invalid, containing neither the element of equality nor uniformity if assessed under the taxing powers,

and equally invalid if in the exercise of the right of eminent domain, no compensation being provided." In quite an elaborate opinion the court held substantially that special assessments could only be imposed in proportion to the benefits actually received by the property upon which they were charged, and that in the absence of an ascertainment of such special benefits the expense must be borne by the entire property of the city. This decision was reaffirmed in *Ottawa* v. *Spencer*, 40 Illinois, 211. Subsequently, and in 1870, a new constitution was adopted, section 9 of article 9 of which is as follows: "The general assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property or otherwise. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform, in respect to persons and property, within the jurisdiction of the body imposing the same." And this came before the Supreme Court in the case of *White* v. *The People ex rel.*, 94 Illinois, 604, and it was held that the city council had power to charge the cost of a sidewalk upon the lots touching it, in proportion to their frontage thereon; that whether or not the special tax exceeded the actual benefit to the lots taxed, was not material; that it may be supposed to be based upon a presumed equivalent; and that where the proper authorities determine the frontage to be the proper measure of benefits, this determination could be neither disputed nor disproved, and the cases in 34 and 40 Illinois, *supra*, were held to be inapplicable. This decision has been reaffirmed in *Craw* v. *Tolono*, 96 Illinois, 255; *Enos* v. *Springfield*, 113 Illinois, 65; *Sterling* v. *Galt*, 117 Illinois, 11; *Springfield* v. *Green*, 120 Illinois, 269.

But the difference between the two constitutions is simply in the mode of ascertaining the benefits, and does not change the essential fact that a charge like the one here in controversy is for the cost of a local improvement, and is charged upon the contiguous property upon the theory that it is benefited thereby. This is the interpretation put upon the matter by

the Supreme Court of Illinois.  In *White* v. *People*, 94 Illinois, 604, 613, it was said: "Whether or not the special tax exceeds the actual benefit to the lot, is not material.  It may be supposed to be based on a presumed equivalent.  The city council have determined the frontage to be the proper measure of probable benefits.  That is generally considered as a very reasonable measure of benefits in the case of such an improvement."  So also in *Craw* v. *Tolono*, 96 Illinois, 255, it is said: "Special taxation as spoken of in our constitution is based upon the supposed benefit to the contiguous property, and differs from special assessments only in the mode of ascertaining the benefits.  In the case of special taxation, the imposition of the tax by the corporate authorities is of itself a determination that the benefits to the contiguous property will be as great as the burden of the expense of the improvement, and that such benefits will be so nearly limited, or confined in their effect, to contiguous property, that no serious injustice will be done by imposing the whole expense upon such property."  And in *Sterling* v. *Galt*, 117 Illinois, 11, in which the difference between special assessment and special taxation was noticed, it was held that the whole of the burden in case of special taxation was imposed upon the contiguous property upon the hypothesis that the benefits will be equal to the burden.

We do not suppose that the company had by its charter any contract with the State that the matter of special benefit resulting from a local improvement should be ascertained and determined only in the then existing way.  There was nothing in the terms of that contract to prevent the State from committing the final determination of the question of benefits to the city council rather than leaving the matter of ascertainment to a jury.  And whether the charges are called special taxes or special assessments, and by whatever tribunal or by whatever mode the question of benefits may be determined, the fact remains that the charges are for a local improvement, and cast upon the contiguous property, upon the assumption that it has received a benefit from such improvement, which benefit justifies the charge.  The charges here are not taxes

proper, are not contributions to the State or to the city for the purpose of enabling either to carry on its general administration of affairs, but are a charge only and specially for the cost for a local improvement, supposed to have resulted in an enhancement of the value of the railroad company's property. It is not in lieu of such charges that the company pays annually the stipulated per cent of its gross revenues into the state treasury.

We see no error in the rulings of the Supreme Court of Illinois, and its judgment is                    *Affirmed.*

Mr. JUSTICE BLATCHFORD took no part in the decision of this case.