## Philadelphia, to use, v. United States Housing Corporation of Pennsylvania.

*Municipal claim against property owned by corporation in which United States owns majority of stock.*

1. A claim for paving filed by the city to the use of the contractor who did the work may be maintained against property owned by a corporation in which the majority of the stock is held by the United States, as such corporation is a legal entity distinct from that of the Federal Government, and, hence, the rule that the sovereign cannot be sued without its own consent does not apply.

2. A municipal claim filed against a property specially benefited by the work for which the claim is filed is not a tax within the rule that the property of the United States is not subject to taxation by the states.

Rule for judgment for want of a sufficient affidavit of defence. C. P. No. 3, Phila. Co., Sept. T., 1920, No. 4254, M. L. D.

*Saul, Ewing, Remick & Saul,* for plaintiff; *G. W. Coles,* for defendant.

DAVIS, J., April 5, 1923.—The use-plaintiff entered into a contract with the City of Philadelphia for the paving of 13th Street in front of premises owned by the defendant company, said premises being situated on the east side of 13th Street and on the south side of Oregon Avenue, in the 39th Ward of the City of Philadelphia; the said paving having been done under authority of an Ordinance of Select and Common Councils of the City of Philadelphia, approved July 16, 1919.

The defendant corporation was incorporated on Oct. 21, 1921, under a charter issued by the Commonwealth of Pennsylvania, "for the purpose of purchasing, holding, leasing, mortgaging and selling real estate, improving the same and erecting the necessary buildings and structures thereon and herein." The corporation was created by virtue of the Act of Congress of May 16, 1918, 40 Stat. at L. 550, and the Act of June 4, 1918, 40 Stat. at L. 595. On Feb. 26, 1921, the President of the United States, by executive order, authorized the procuring of the corporation.

It is not denied that the work and labor were performed as set forth in the lien filed by the City of Philadelphia, and it is admitted that the premises against which the lien is filed were conveyed to the defendant corporation and are now owned by that corporation, a majority of the stock in the corporation being owned by the Government of the United States.

It is claimed that the defendant corporation is an arm of the Government and one of its executive agencies. It is, therefore, contended that no tax can be assessed against its property or against the property of any Government agency; and, further, that, inasmuch as the suit is, in substance and effect, a

suit against the United States, with respect to property of the United States, and as the United States has never consented to be sued with respect to the subject-matter of this suit, this court is without jurisdiction to entertain it.

The functions of the defendant corporation are similar to those exercised by the United States Emergency Fleet Corporation, and we are of opinion that the law controlling actions against the Emergency Fleet Corporation is controlling as to the liability of the defendant in this case.

In Sloan Shipyard Corporation et al. *v.* United States Shipping Board, Emergency Fleet Corporation, and the United States, 258 U. S. 549, it was held: "The Emergency Fleet Corporation, as originally created, had the powers of corporations under the laws of the District of Columbia when it was incorporated, and was liable to be sued there and elsewhere upon its contracts and for its torts, notwithstanding the fact that it was a Federal agency and that its stock was taken entirely by the United States."

The act creating the United States Housing Corporation contemplated a corporation in which private persons might be stockholders. It was to be formed like any business corporation under the laws of the State of Pennsylvania, with capacity to sue and be sued. It is immaterial that the United States took all or a majority of the stock. In the above cause it was further stated by the court:

"These provisions sufficiently indicate the enormous powers ultimately given to the Fleet Corporation. They have suggested the argument that it was so far put in place of the sovereign as to share the immunity of the sovereign from suit otherwise than as the sovereign allows. But such a notion is a very dangerous departure from one of the first principles of our system of law. The sovereign, properly so called, is superior to suit for reasons that often have been explained. But the general rule is that any person within the jurisdiction always is amenable to the law. If he is sued for conduct harmful to the plaintiff, his only shield is a constitutional rule of law that exonerates him. Supposing the powers of the Fleet Corporation to have been given to a single man, we doubt if any one would contend that the Acts of Congress and the delegations of authority from the President left him any less liable than other grantees of the power of eminent domain to be called upon to defend himself in court. An instrumentality of government he might be and for the greatest ends, but the agent, because he is agent, does not cease to be answerable for his acts."

In Haines et al. *v.* Lone Star Shipbuilding Co. and United States Shipping Board, Emergency Fleet Corporation, 268 Pa. 92, it was held: "When the Government embarks in industrial enterprises through corporate form, it places its money and its sovereign position in the same plane as any other stockholders buying stock in the same corporation."

That case came before the court on a rule to discharge a writ of foreign attachment in the Court of Common Pleas No. 5, and the court discharged the rule. The United States Shipping Board, Emergency Fleet Corporation, garnishee, appealed. The order of the lower court was affirmed. The Supreme Court in its opinion stated: "If it was the intent of the Congress that the Fleet Corporation should be immune from civil process, it would have been very easy to have written it into the act; but nowhere is such language found, nor can it be reasonably inferred therefrom. If the Fleet Corporation was to be immune from civil process of any nature whatever, why the necessity of a fleet corporation at all? The United States Government, acting through the Shipping Board as such, was immune from such process. It possessed the power and authority to do all the corporation could do. What

Philadelphia, to use, *v.* United States Housing Corporation of Pennsylvania.

was the intent of the Congress when it authorized the creation of the Fleet Corporation if it was not for the purpose of conducting a business corporation and assuring to those with whom it dealt that they would have a speedy adjustment of all claims. If not so adjusted, they had a debtor responsible in a court of law for the contracts and obligations undertaken, and when its contractors incurred debts, a way was at hand, as in this case, to compel payment."

In Sullivan *v.* United States Shipping Board, Emergency Fleet Corporation, 76 Pa. Superior Ct. 30, it was held: "The United States Shipping Board, Emergency Fleet Corporation, a corporation incorporated under the laws of the District of Columbia, is not a branch of the United States Government, but is a private corporation doing business in Pennsylvania, and as such is subject to all of the laws of the Commonwealth."

As we have already indicated, the defendant in the case at bar was created under the laws of the State of Pennsylvania. We are, therefore, of opinion that, as a private corporation doing business in Pennsylvania, it is subject to all the laws of the Commonwealth. The rule that the sovereign cannot be sued without its consent does not apply, as it is a suit directly against a corporation of the State of Pennsylvania.

The defendant further contends that the property held by the defendant is the property of the United States, and, therefore, not subject to taxation by the states. The claim filed by the city is not in the nature of taxation; it was simply the method adopted for the collection of a bill for work and labor performed.

"In a broad sense, taxes may be said to include assessments for improvements, since the right to impose assessments has its foundation in the taxing power of the Government; but in practice and as generally understood there is a clear distinction between the two terms, and ordinarily such assessments are not included in the terms 'taxes' or 'taxation.' Taxes are burdens or impositions laid for purposes of general revenue, while assessments are special and local impositions upon property in the immediate vicinity of a public improvement, made for the public welfare, which are necessary to pay for the improvement and made with reference to the special benefit which such property derives from the expenditure. Hence, a charge imposed by law upon all taxable property in a given district is a tax and not an assessment, although the purpose is to make a local improvement; and, conversely, a charge imposed only upon those property owners who are to enjoy the benefits accruing from the improvement is an assessment:" 37 Cyc., 712.

The distinction was also drawn between assessments and taxation in the case of Sewickley Methodist Episcopal Church's Appeal, 165 Pa. 475, where it was held: "The exemption from taxation of places of public worship, authorized by art. IX, par. 1, of the Constitution of 1874, does not extend to a municipal charge or assessment against a church for paving a street.

"The constitutional exemption relates to taxes proper, or general public contributions, levied and collected by the State or by its authorized municipal agencies for general governmental purposes, as distinguished from peculiar forms of taxation or special assessments imposed upon property within limited areas, for the payment of local improvements therein, by which the property assessed is specially and peculiarly benefited and enhanced in value to an amount at least equal to the assessment."

In Northern Liberties *v.* St. John's Church, 13 Pa. 104, it was held that an assessment for pitching, curbing and paving a street was not a tax within the meaning of the Act of April 16, 1838, P. L. 514, 525, exempting churches and

Philadelphia, to use, *v.* United States Housing Corporation of Pennsylvania.

burial grounds from taxes. See, also, Illinois Central R. R. Co. *v.* Decatur, 147 U. S. 190-197.

We are of opinion that the rule of law that the property of the United States is not subject to taxation by the states does not apply under the facts in the case at bar.

The collection of the costs of street paving is not a source of revenue to the State or municipality; hence, not a tax for the support of the municipality. Taxes are forced contributions for the support of the body politic, and in this respect are distinguishable from a debt due the municipality. In the present case no part of the amount due for the street paving would accrue to the city, but is due to the contractor for labor and material furnished.

The rule for judgment for want of a sufficient affidavit of defence is made absolute, and judgment is entered for the plaintiff.