## FAIRFAX DRAINAGE DIST. OF WYANDOTTE COUNTY, KAN., v. KANSAS CITY, MO.

District Court, D. Kansas, First Division. July 12, 1928.

No. 3223.

1. **States** ⟨⇒⟩6—Compact whereby Kansas agreed not to levy taxes, assessments, or imposts on waterworks plant of Kansas City, Mo., does not exempt from drainage assessment (Laws Kan. 1921, c. 304).

Compact between states of Kansas and Missouri whereby state of Kansas agreed that neither state nor any county, township, or municipality should ever assess, levy, or collect any taxes, assessments, or imposts of any kind on portion of waterworks plant of Kansas City, Mo., located within state, under Laws Kan. 1921, c. 304, *held* not to exempt such property from assessments directly benefiting property, such as pavement, sidewalks, or drainage.

2. **Drains** ⟨⇒⟩90—Drainage district held proper party plaintiff to collect drainage assessment, though assessment was certified to county.

Drainage district *held* proper party plaintiff to collect assessment on property located within drainage district, though drainage district had certified assessment to county, since, if defendant did not pay assessment, the other property lying within district must pay it, since it cannot be liability upon county at large, and court has power to protect defendant against paying it a second time.

Action by the Fairfax Drainage District of Wyandotte County, Kansas, against Kansas City, Mo. Defendant filed a general demurrer. Demurrer overruled.

Wm. Drennan, W. C. Rickel, and J. A. Lynch, all of Kansas City, Kan., for plaintiff.

Roberston, Boddington & Stickel, of Kansas City, Kan., for defendant.

McDERMOTT, District Judge. A general demurrer has been lodged against the petition, and has been elaborately briefed and argued; it now comes on for decision. The petition alleges:

Kansas City, Mo., owns approximately 54 acres of ground in Kansas, upon which is constructed its waterworks plant, the sole source of water supply for Kansas City, Mo.; the creation of the plaintiff drainage district, within which is located the lands of the defendant; that this district was created under the Kansas statutes for the purpose of protecting the lands within the district from overflow from the Missouri river, from being flooded by surface water, and for general drainage purposes; that the cost of said improvement was more than a million dollars, which has been paid for by the issuance and sale of bonds of the district, and that special assessments have been levied against the property in the district in proportion to the benefits for the purpose of paying the bonds; that the defendant has refused to pay the assessments levied against its property for the four-year period from 1924 to 1927, inclusive, and that it is now indebted to the plaintiff in the sum of $12,860.50, for which sum judgment, with interest and penalties as provided by law, is prayed. The general demurrer presents several questions, one of which is of importance. These questions are: (1) That, by virtue of a joint resolution passed by the Legislatures of Kansas and Missouri, and approved by Congress, this property is not subject to this assessment; (2) that, even if a liability exists, it cannot be enforced in this action, because a personal liability cannot be created against a nonresident, and the sole remedy of the plaintiff is to sell the waterworks property at public sale for unpaid taxes; and (3) that, even if a personal judgment can be rendered, the drainage district is not the proper party plaintiff. Of these, in their order.

[1] I. Many years ago the question arose as to whether this property was subject to general taxation. The question came before the Supreme Court of Kansas in the case of State v. Holcomb, 85 Kan. 178, 116 P. 251, 50 L. R. A. (N. S.) 243, Ann. Cas. 1912D, 800, and it was there held that this property was subject to general taxation, just as any other private property located in the state. It was held:

"And so it may be said here that when a city of the state of Missouri comes into Kansas, it comes as a private party and brings with it none of the prerogatives of sovereignty. The general rule is that all property,

not expressly exempted, is taxable, and the fact that the state does not tax itself and its municipalities to obtain revenue for itself is no reason why a foreign municipality, who is here in the capacity of a private proprietor and whose property receives protection from the state, should contribute nothing toward that protection or should escape paying the taxes imposed upon other owners of property."

Certiorari was denied by the Supreme Court of the United States. 226 U. S. 599, 33 S. Ct. 112, 57 L. Ed. 375.

To remedy this situation, the Legislature of Kansas and the Legislature of Missouri passed identical joint resolutions; the Kansas resolution being chapter 304 of the Laws of 1921. This resolution recites the facts concerning the location of the waterworks plants of the two cities of Kansas City, Kan., and Kansas City, Mo.; that it is to the material benefit of each city that each should contribute to a common fund in protecting the banks of the Missouri river so as to assure an adequate flow of water to both plants; that the water plants of both cities are connected, so that each serves as a standby for the benefit of the other, in case of an emergency. Because of these things, the following compact was entered into:

"The state of Kansas, nor any county, township or municipality located within said state, or any official thereof shall ever assess, levy or collect any taxes, assessments or imposts of any kind or character whatsoever on the portion of the waterworks plant of the municipality of Kansas City, Missouri, now or hereafter located within the territory of the state of Kansas."

A reciprocal right of eminent domain was also granted.

The making of this compact was approved by joint resolution of Congress.

If any substantial doubt exists about the matter, it should be resolved in favor of the defendant. States must be ever zealous in carrying out the letter as well as the spirit of their obligations; but, as I see the matter, the intent of this resolution is not subject to serious dispute.

The briefs indulge in a refinement and nicety of interpretation and definition, that seem to be entirely unnecessary in construing this resolution. After all, the object of the inquiry is to arrive at the intent of the parties as expressed in their agreement, in the light of existing circumstances.

Bearing in mind that the Kansas court had shortly theretofore held that these prop-erties located in Kansas were subject to general taxation, while the adjoining waterworks properties of Kansas City, Kan., were not subject to general taxation; bearing in mind that the waterworks property of Kansas City, Mo., would not be subject to general taxation if it were located across the line in Kansas City, Mo.—the object of the agreement seems to be clear. What the parties were striving to do, and what they effectually did, was to place the properties of Kansas City, Mo., located in Kansas, in exactly the same situation as the properties would have been if they were located in Missouri, and in exactly the same situation as the adjoining Kansas City, Kan., waterworks properties. In short, the intention of the parties was to remove the state line as far as these particular properties are concerned. The argument of the defendant, however, leads to the irrational conclusion that by this compact, the properties of Kansas City, Mo., which happen to be located in Kansas, are granted an immunity which they would not obtain if they were located in Missouri, and an immunity which the Kansas City, Kan., waterworks properties do not enjoy. I can find nothing in the resolution or the attendant circumstances that leads to any such conclusion. There certainly was no intention, expressed or fairly implied, to require other property owners in Kansas to increase the value of the defendant's waterworks plant, by diking and drainage, or by the construction of pavements or sidewalks.

In both Kansas and Missouri, public properties of municipalities are exempt from general taxation, but are subject to assessments for special improvements, such as paving, sidewalks, and drainage. For some of the Missouri cases to this effect, see Drainage District v. Bates, 269 Mo. 78, 189 S. W. 1176; Houck v. Drainage District, 248 Mo. 373, 154 S. W. 739. For the Kansas cases to the same effect, see Commissioners of Franklin Co. v. City of Ottawa, 49 Kan. 747, 31 P. 788, 33 Am. St. Rep. 396; Wichita v. Board of Education, 92 Kan. 967, 142 P. 946.

The property of the defendant would be subject to this assessment if it were located in Missouri; the properties of the Kansas City, Kan., waterworks are subject to the assessment. There is nothing in the resolution or the circumstances to indicate that Kansas intended to grant an immunity to the properties of the defendant which it does not grant to properties of Kansas City, Kan., nor that Missouri intended that its proper-

ties should be freed from special assessments in Kansas to which they are subject in Missouri.

If any refinement of logic is necessary to support this point, it will be found in the case of Illinois Central Railroad Co. v. City of Decatur, 147 U. S. 190, 13 S. Ct. 293, 37 L. Ed. 132, where the Supreme Court of the United States, speaking through Mr. Justice Brewer, held that an exemption of "any tax or public imposition whatever" did not relieve from an obligation to pay for pavement of the streets, and that an exemption from "all public taxes, rates, and assessments" did not discharge from liability for special improvements, and that exemption from "taxes, charges, and impositions" did not relieve from such special assessments. It is neither necessary nor proper to undertake an exact definition of the phrase "municipality" as used in this act, for the reason that other questions may arise in the future which are not now present for determination. Suffice it to say that the compact does not exempt from such assessments as directly benefit the property, such as pavement, sidewalks, or drainage.

II. Even if the defendant is liable for this assessment, and ought to pay the same, defendant's counsel urge that the remedy is not an action at law for the amount of the taxes, but the remedy is limited to the public sale of the waterworks property of the defendant, as in the case of an ordinary town lot. The argument is that the ownership and operation of a waterworks plant is not a part of the governmental functions of the city, but is the exercise of a proprietary function; that the Supreme Court of Kansas has held that Kansas City, Mo., owns this particular property in its proprietary capacity and not in its public capacity; that ordinarily the imposition of a tax or an assessment does not give rise to any personal liability, but the sole recourse of the taxing body is to put the property up and sell it at forced sale. It is difficult to believe that such an argument is seriously made. The city of Kansas City, Mo., is a municipality larger than many states; it is as jealous of its good name and its credit as states and other great municipalities. It is not believed that, if it should finally be held by the court of last resort that Kansas City, Mo., is indebted on account of this benefit to its property, that that great city would decline to pay its just and honest obligation. Neither is it believed that it would permit the lives and health and property of its citizens to be imperiled by the sale of its water-

works property for an obligation that is paltry compared with its value. In the briefs filed in this case, the plaintiff is invited to put up this waterworks property at public sale and knock it off to the highest bidder for the purpose of paying this obligation. Until the city of Kansas City, Mo., declines to pay the obligation, if it is finally adjudged to be a legal obligation, there should be no need of spending any particular time in an inquiry as to a method of collection, whether it be by personal judgment, a forced sale of the properties or a part thereof, a sequestration of a portion of the revenues, or a receivership; but, since the power of the plaintiff to collect this obligation is challenged, even if it should be found to be a legal liability, this may be said about the matter:

It is argued that neither the state of Kansas, nor any subdivision thereof, may create a personal tax liability on a nonresident. Dewey v. Des Moines, 173 U. S. 193, 19 S. Ct. 379, 43 L. Ed. 665. The fact that personal service of summons may be had upon the nonresident does not cure the matter, for the assessment is in itself in the nature of a judgment. It is argued by the plaintiff that, since the defendant is actively engaged in business in Kansas, it is like a foreign corporation which actively engages in business in the state, and has gained the attributes, and assumed the responsibilities, of residence. The question would only be of importance, however, if the amount of the assessment exceeded the value of the property located in Kansas, and an effort was made to collect a deficiency judgment. That situation does not exist in the present case.

This does not reach the question. The question in this case is whether a sale at public auction of properties used for the benefit of the public is an appropriate means of collecting an assessment which is less than the value of the property. It is true that, in the ordinary case, an action at law for a money judgment cannot be maintained for the purpose of collecting a tax. However, not only the Kansas courts, but the courts of the country generally, have recognized that it is not feasible, nor proper, to sell a courthouse, a schoolhouse, or a fire station, for the collection of a tax. It has therefore been held that in such cases, an action at law for a money judgment is proper. Commissioners of Franklin Co. v. City of Ottawa, 49 Kan. 747, 31 P. 788, 33 Am. St. Rep. 396; Jefferson Co. v. Oskaloosa, 80 Kan. 587, 102 P. 1095; Wichita v. Board of Education, 92 Kan. 967, 142 P. 946;

State v. Southern S. S. Co., 13 La. Ann. 497; McLean v. Bloomington, 106 Ill. 209; Northern Ala. R. Co. v. Lowery, 3 Ala. App. 511, 57 So. 260.

The question is really one of circuity of action. If the circumstances presented are such that, if a forced sale of the property for the purpose of collecting the tax would be enjoined in the public interest, then, in order to avoid such second action, a judgment may be rendered in the instant case. The question of what a court of equity would do, in such an action, is not answered by the mere statement that the property is held in a proprietary capacity. Courts of equity will enjoin private corporations from cutting off a supply of gas to the public where the cutting off of such supply would work an untold hardship on hundreds of innocent families, will enjoin a railroad company from suspending transportation facilities, and a telephone company from cutting off the service. The state of Missouri has enjoined fire insurance companies from withdrawing from the state. The petition in this case alleges that the waterworks plant located in this drainage district is the sole source of water supply to the great city of Kansas City, Mo. If that is true, and if it should appear that no part of the property could be sold without cutting off that supply of water, it goes without saying that no court would permit the properties of a great city to be subject to a widespread conflagration because of lack of water, or the lives of its citizens to be jeopardized by lack of proper sewage facilities, or their comfort and convenience jeopardized by lack of water for drinking and bathing purposes, and this even if the properties were owned by a private corporation. If, upon the hearing of this case, it develops that a part of the properties can be sold, sufficient to satisfy the liability, without interfering with the operation of the waterworks properties, and the defendant at that time insists upon such sale rather than pay a judgment, the question can then be determined as to the propriety of a personal judgment. But such facts do not appear from the petition. The defendant's constitutional rights can be protected upon final hearing by a determination as to whether the fair value of its properties exceeds the total assessments for this improvement.

[2] III. It is contended that, since this assessment has been certified by the plaintiff to Wyandotte county, that Wyandotte county is the proper party plaintiff, and some apprehension is expressed by the defendant as to whether, if a judgment is rendered in favor of plaintiff and paid, that Wyandotte county might seek to collect it a second time. The plaintiff is a proper party. If the defendant does not pay its proportion of this benefit, the other property lying within the district must pay it, for it cannot be a liability upon the county at large. If it shall be eventually determined that a liability exists, there is abundant power in the court to protect the defendant against paying it a second time, by the requirement of a receipt by the county as a condition of the payment, or by making the county a party defendant.

The plaintiff claims that any defense is barred by the statute of Kansas, which requires that certain objections to such assessments shall be made within 30 days; but others need not be, and it will be time enough to determine the effect of this statute when the defenses are presented.

The demurrer will be overruled, and the defendant given 30 days in which to answer.