CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant, v. TOWN OF CHURDAN, Appellee.

**MUNICIPAL CORPORATIONS:** Public Improvements — Assessment
1  **Against Railway Right of Way.** A railway right of way, the title to which is held in fee by the corporation, is not exempt from special assessment for the purpose of defraying the cost of a sewer abutting · upon or adjacent to such right of way. · (Secs. 819, 821, Code, 1897; Sec. 820, Code Supp., 1913.)

**RAILROADS:** Nature of Right of Way. A right of way owned in fee
2  by a railway company is not a mere easement.

**MUNICIPAL CORPORATIONS:** Public Improvements — Assessment
3  **Against Right of Way.** Assessment against a railway right of way for sewer "laterals" reviewed, and held to be fairly equivalent to assessments levied against other classes of property, and reasonable.

**MUNICIPAL CORPORATIONS:** Public Improvements — Inequitable
4  **Assessment.** An assessment against a railway right of way for sewer "outlet," substantially out of proportion to assessments for the same purpose on other property of the same area, is necessarily excessive.

*Appeal from Greene District Court.*—M. E. HUTCHISON, Judge.

DECEMBER 11, 1923.

IN the district court, this was an appeal from a sewer assessment ordered by the city council of the town of Churdan against the railway property of the plaintiff comprising its right of way. The district court confirmed the assessment, and the plaintiff has appealed.—*Modified and affirmed.*

*Hughes, Taylor & O'Brien,* for appellant.

*Wilson & Harris,* for appellee.

EVANS, J.—I. The appellant owns and operates a railway. through the town of Churdan. This town constructed a sewer system, and a considerable part of appellant's property, consisting of right of way, is abutting on and adjacent to such sewer system. It was assessed accordingly. Two general contentions are made by the appellant:

1. MUNICIPAL CORPORATIONS: public improvements: assessment against railway right of way.

(1)    That the right of way of the railway company is not subject to sewer assessments at all.

(2)    That, in any event, the assessment was excessive, and not in proportion to the assessment against other property.

On the first proposition, the argument is that appellant's right of way is only an easement, and therefore is not a "lot or parcel of ground," within the meaning of the statute. Particular reliance is placed upon the case of *Chicago, R. I. & P. R. Co. v. City of Ottumwa,* 112 Iowa 300, wherein this argument was sustained, as relating to street improvements. The holding in that case was that there was no provision of statute authorizing an assessment for street improvements against the mere easement of a right of way of a railway company. Thereafter, the statute was so amended specifically as to authorize assessments against such easements for street improvements and for sidewalks, and so as to make the railway company liable for the payment of such assessment, as for a debt. This amendment contained no reference to sewer assessment. It is, therefore, contended that the doctrine enunciated in the cited case is still applicable to sewer assessments, and that, under such doctrine, they cannot be levied upon appellant's right of way. The same doctrine was enunciated in *Brown v. Young,* 69 Iowa 625; *Smith v. Hall,* 103 Iowa 95.

First of all, it must be noted that, in the cited cases, emphasis was laid upon the fact that the property of the corporation involved in such case was a *mere* easement, and that the fee of the land was outstanding in another owner. We are at once confronted with the distinction in the case at bar, wherein the railway company owns the fee of its right of way, and wherein, also, it owns a right of way 200 feet in width through a considerable portion of the town. It does hold the fee title to the lot or parcel of ground over which its right of way extends. It is argued, however, that, because of certain provisions of the statute (Code Section 2015), its property consists of an easement, nevertheless, and nothing more.

The provisions for the levy of sewer assessments are set forth in Code Sections 819 to 821, as follows:

"Sec. 819. The cost, or any part thereof, of making or reconstructing sewers, including that provided for in the second preceding section, may be paid from the district sewer fund of the sewer district in which the same is situated, or from the city sewer fund, or from the general revenue, and the portion thereof not so paid, and not in excess of three dollars per linear foot of sewer, shall be assessed against the *property* abutting on such sewer in proportion to the number of linear front feet of each parcel thereof, and upon adjacent *property* in proportion to the benefit thereto; but in estimating the benefits to result therefrom to adjacent property, no account shall be taken of improvements, and each lot or parcel of land shall be considered as wholly unimproved. The city may combine any or all of said methods of assessment.

"Sec. 820. When the making or reconstruction of any street improvement or sewer shall have been completed, or such part thereof shall have been completed as, under the contract, is to be paid for when done, the council, or board of public works where such board exists, shall ascertain the cost thereof, including the cost of the estimates, notices, inspection, and preparing the assessment and plat, and shall also ascertain what portion of such cost shall be, by law and the ordinance or resolution of the council under which such street improvement was made or sewer constructed, assessable upon abutting *property;* and, in case of sewers, also upon adjacent property, and what

portion shall be assessed upon such abutting property, and in case of sewers, upon such abutting and adjacent property, for intersections and spaces opposite property owned by the city or the United States; and the council shall then assess such portions upon and against such property as provided by law.

"Sec. 821. In assessing that part of the cost of the making or reconstruction of any street improvement or sewer, or completed part thereof, which is assessable against the *lots or parcels of ground* abutting thereon, or, in case of sewers, adjacent thereto, the council, or board of public works where such board exists, shall cause to be prepared a plat of the streets, avenues, highways, alleys, or the part thereof on which the same shall have been made or reconstructed, showing the separate lots or parcels of ground, or specified portion thereof, subject to assessment for such improvement, the names of the owners thereof as far as practicable, and the amount to be assessed against each lot or parcel of ground, and *against any railway* or street railway, and shall file said plat and schedule in the office of the clerk, which shall be subject to public inspection."

It will be noted that, under Sections 819 and 820, the sewer assessments are to be made upon abutting and adjacent *property*. Under Section 821, this property is referred to as "lots or parcels of ground." Section 821 contains a clear implication that railway real property is within the contemplation of the statute. Does the appellant railway company own real *property* or a *parcel of ground* which abuts upon or is adjacent to this sewer system? The appellant acquired its property by warranty deed, without any reservation whatever. No person has any right or interest in the title to such property, other than the appellant. It is true that Section 2015 puts the railway corporation under disability to hold its title in case of long nonuser. Does this fact reduce its title to a mere easement of use? We think not. No one has any adverse beneficial claim to it. It has the full power of alienation. As a corporation, it is necessarily subject to legislative control. The legislature may at any time remove its disability, or it may add thereto. This subjection to legislative control inheres in the fact that it is a legislative creation.

For the purpose of construing the sections of the statute

2. RAILROADS: nature of right of way.

above quoted, it must be held that a railway corporation which holds the full fee title to the land over which its right of way extends, owns *property* and a *parcel of ground*, within the meaning of these sections. Nor is there any inconsistency between this holding and that in the case of *Chicago, R. I. & P. R. Co. v. City of Ottumwa, supra*. This property was, therefore, subject to assessment for sewer purposes.

II. Was the assessment excessive? It will be noted that, under the provisions of Section 819, the proportion of a sewer assessment, especially on adjacent property, is predicated largely upon the area of such property, and this without reference to the value of the improvements erected thereon. In the plan of assessment adopted by the city council, a city lot with

3. MUNICIPAL CORPORATIONS: public improvements: assessment against right of way.

a dimension of 66 feet by 132 feet was taken as a unit. A uniform assessment was made in two parts against each lot. One part was called an "assessment for laterals," and the other was called an "assessment for outlet." The first had reference to the facilities for actual connection of the city lot with the sewer system. The second had reference to the main sewer and to the disposal plant at the outlet thereof. For laterals, a uniform assessment of $81.81 was laid against each city lot; and for outlet, a uniform assessment of $14.77. To this uniformity, there was an exception against a business lot. The dimensions of these business lots were one third, respectively, of those of a city lot: that is, each business lot was 22 feet by 132 feet. By reason of the fact that each business lot was deemed to require an individual lateral connection, the same amount of assessment was made against each business lot as was made against each unit or residence lot.

As against the railway company, an assessment for laterals was made of $247.92. This was the approximate equivalent of an assessment against three city lots, for laterals. There were situated upon the property of the railway company five business centers, including two elevators, two lumber yards, and a depot. We see no room to question the reasonableness of this particular item, and we pass it without further discussion.

The assessment against the railway company for outlet, however, was $671.28. The principal complaint is directed to

this item. The plan adopted by the council for determining the amount to be assessed on this item was that it laid upon the appellant's property an imaginary town plat. It excluded from consideration a zone of 60 feet, upon which the tracks were laid, and estimated that the remaining property was the equivalent in area of 16 city or residence lots, and therefore of 48 business lots. It assessed the same, therefore, on the basis of 48 business lots. Clearly, this item is out of proportion to the assessment made against the great body of the area of the town. The only possible ground of justification for it is in the fact that the same departure was made as against the city lots in the business part of the town. Does the fact that the council departed from the rule of uniformity by an exception against the city lots furnish any justification for allowing such exception to control the rate of assessment fixed against the appellant's property? There was a very plausible reason for the exception as applied to the business lots, in that the largest item, of $81.81, was made for the cost of lateral connections. These business lots were abutting property, rather than adjacent, and the cost of each connection was precisely the same for each of them as it was for a residence lot. Under Section 819, the assessment on abutting property was to be made according to the lineal foot; that on adjacent property was to be made in proportion to benefit, and without reference to improvements. The property of appellant company was, in the main, adjacent property, rather than abutting. The improvement did not cross the right of way. It did approach it. The item under consideration was assessed, not for laterals, but for *outlet*. As to all other property in the town, the cost of outlet was approximately one sixth of the cost of laterals; but as against the appellant's property, such cost of outlet was made to *exceed* the cost of laterals by a large amount. We see no way to harmonize these conflicting proportions. Nor can we see any fair reason why any greater proportionate charge for outlet should be made against the appellant's property than was made against a like area of the regular city lots. Putting the assessments upon this area of appellant's property on the same basis as the area included in the regular city lots, the result would be an assessment of just

**4. MUNICIPAL CORPORATIONS: public improvements: inequitable assessment.**

one third the amount actually assessed. We find no justification in the record for any higher assessment than here indicated. This was the rate imposed upon all the ground abutting upon the right of way on either side, being a total of twelve blocks, except two half blocks thereof, which contained business lots. The area covered by the business lots was a very small proportion of the sewer district.

The judgment entered below will be modified so as to reduce this item to a sum equal to one third thereof. Each party will pay one half of the costs.—*Modified and affirmed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.