**WABASH RY. CO. v. CITY OF ST. LOUIS.**

No. 9296.

Circuit Court of Appeals, Eighth Circuit.

April 1, 1933.

Rehearing Denied May 23, 1933.

Homer Hall, of St. Louis, Mo. (N. S. Brown and J. H. Miller, both of St. Louis, Mo., on the brief), for appellant.

923

J. B. Steiner, of St. Louis, Mo. (Julius T. Muench and G. Wm. Senn, both of St. Louis, Mo., on the brief), for appellee.

Before STONE and KENYON, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

On April 18, 1922, there was approved by the mayor of the city of St. Louis, Mo., an ordinance (referred to in the record as Ordinance No. 31656) enacted by the board of aldermen, providing for the establishment, opening, and widening of a highway in that city, and in that connection directing the condemnation of private property. The city counselor was instructed in the ordinance to institute appropriate proceedings in accordance with the provisions of the city charter.

The charter provides (section 1, article XXI, of the charter)[1] that upon the passage of such an ordinance the city counselor shall apply to the state circuit court by petition for the appointment of commissioners to assess damages and benefits. In this case he did so apply to the circuit court (the petition was filed November 16, 1922) and that court on October 29, 1923, appointed commissioners and ordered that they proceed to assess damages and benefits. The commissioners, as was their duty (section 5, article XXI, of the charter)[2], fixed the benefit or

[1] Section 1. Condemnation of or damage to private property, real or personal, or any easement or use therein, for public use, shall be effected as herein provided. * * * Upon the board of aldermen providing by ordinance, recommended by the board of public service, (1) for the appropriation of any private property or any easement or use therein for any public use, or (2) for any public improvement or work which will damage private property, the city counselor, in the name of the city, shall apply promptly, and in no event later than six months after such ordinance is effective, to the circuit court of the eighth judicial circuit, or to any judge thereof in vacation, by petition setting forth the general nature of the public use for which the property is to be appropriated or damaged, a description of the property and the estate or interest therein in each instance which the city seeks to appropriate or damage and praying the appointment of three disinterested commissioners to assess damages and benefits as hereinafter provided. * * *

[2] Section 5. The commissioners shall view the property to be taken, damaged, or assessed; fix the benefit or taxing district; publish in said newspaper for ten days before beginning their assessment a notice of the boundaries of the benefit or taxing district and of the time and place at which they will assess such damages and benefits; hear the evidence submitted by the parties interested; assess the damages and benefits as of the date said ordinance became effective; and make report, in which at least two commissioners shall concur, of such assessment in writing and under oath to the circuit court. In such report the compensation allowed to and the benefits assessed against each owner shall be separately stated. When the commissioners both assess benefits and allow damages against any one property owner, they shall deduct the lesser from the greater.

taxing district, and, after extended hearings and investigation, on November 20, 1928, filed their report in which, inter alia, they assessed benefits in specified amounts against eighty-two parcels of real estate lying within the benefit district previously established and which belonged to the Wabash Railway Company, the appellant here.

Section 7, article XXI, of the charter provides that—

Section 7. Within twenty days after the filing of the commissioners' report, exceptions in writing thereto may be filed by any party interested, and upon such exceptions the court shall review the report and may order, on cause shown, a new assessment by other commissioners, or make such other orders thereon as justice may require. The court shall hear and dispose of such exceptions with all reasonable speed; and may itself assess benefits anew.

The appellant timely filed in the circuit court its exceptions to the report of the commissioners, petitioned for a removal of the cause to the United States District Court, and the cause was removed. In the District Court trial by jury was waived, the court heard evidence touching the benefits to the various parcels of appellant's property and made findings of fact, in some instances confirming the amounts reported by the commissioners and in others assessing different amounts. Judgment was given the city, appellee here. The appeal is from that judgment.

The jurisdiction of the District Court is conceded by the parties. Commissioners, etc., v. Railway Company, 257 U. S. 547, 42 S. Ct. 250, 66 L. Ed. 364; Id. (8 C. C. A.) 265 F. 524.

The errors assigned may be divided into two groups, those which go to the whole case and those which affect the judgment only as to the benefits assessed against certain parcels of appellant's property. It will be necessary to set out additional facts in connection with our discussion of asserted errors.

The City Counselor Had Authority To Institute This Proceeding.

1. The ordinance to effectuate which a proceeding was instituted in the circuit court was entitled, "An ordinance for the establishment, opening and widening of a highway extending from Third Street westwardly along Walnut Street to Sixth Street and from said Sixth Street westwardly along Market Street to Vandeventer Avenue, providing for the vacation of a certain part of Market Street, and directing the condemnation of private property for the opening and wid-

ening of said highway." Sections 1 and 2 of the ordinance fully describe the proposed improvement as set out in the title and designate by specified boundaries what properties along Walnut and Market streets are to be condemned for the improvement. The concluding section of the ordinance, section 3, is as follows:

"The city counselor is hereby instructed to bring action in condemnation pursuant to the charter of the City of St. Louis, for the appropriation of private property, for the establishment, opening and widening of said highway along Walnut Street as hereinbefore ordained in Section 1 of this ordinance, and for the vacation of that part of Market Street as described in Section 2 thereof."

The appellant points to the language of section 3 of the ordinance and argues that it authorized the city counselor only to bring condemnation proceedings for the appropriation of private property for the establishment, opening, and widening of (the contemplated) highway along Walnut street and argues that he was not authorized to institute condemnation proceedings for the establishment, opening, and widening of the highway along Market street. The Market street portion of the proposed highway was much the longest part of the proposed highway.

■ This contention requires little consideration. When the whole ordinance is read, it is clear that the intention was that condemnation proceedings should be instituted for the whole route. The omission of the words "Market Street" from section 3 is an obvious oversight. Moreover, its omission from that section is of no significance for the reason that the duty of the city counselor is not dependent on any provision in the ordinance. The whole of section 3 might have been omitted without the lessening of his duty or the changing of his function in the premises. It is not the ordinance which imposes on him the duty of instituting proceedings. His duty arises from the provisions of the charter.

Section 1 of article XXI of the charter expressly provides that after the enactment of such an ordinance the city counselor shall institute proceedings in the circuit court to effectuate its purpose. And even if the charter did not charge the counselor specifically with this duty, it would be his duty by virtue of his office as the city's legal representative.

### The Reception in Evidence of the Report of the Commissioners Was Not Prejudicial Error.

■ 2. Upon the trial the city was required to assume the burden of proof. As a part of its case it offered in evidence the report of the commissioners setting out their assessments against appellant's properties. Appellant objected. The objection was overruled. The report was received. It is urged this was error. And it was error if this proceeding was de novo.

■ The Supreme Court of Missouri, construing the charter provisions authorizing this proceeding (and we are bound by that court's construction if definitely settled), has held that the effect of filing exceptions to the report of commissioners "is to vacate the award and afford the exceptors a trial de novo" and that at such a trial "the award of the commissioners * * * [is] not admissible in evidence." City of St. Louis v. Matilda Schopp et al., 325 Mo. 480, 486, 30 S.W.(2d) 733, 735. But the construction thus given the charter provisions involved cannot be said to be settled with definiteness. In City of St. Louis v. Abeln et al., 170 Mo. 318, 323, 70 S. W. 708, 709, it was ruled that the report of the commissioners not only was competent in evidence but that the trial judge should give it great weight. The Missouri court said there:

"In a review of the commissioners' report on exceptions thereto the report itself is to be considered, and it must stand until it is shown to be wrong either in a point of law or in a matter of fact. This proceeding is statutory, and is peculiar. To some extent it has the character of a trial de novo, but it is not entirely so. It is not, for example, like a trial in the circuit court of a cause brought up by appeal from a justice's court, in which case the statute requires the circuit court to try the cause anew, without regard to anything that occurred at the trial before the justice, or to his findings or judgment. * * * And it is not exactly like a review of the verdict of a jury on a motion for new trial, for there the judge who heard the same evidence that the jury heard weighs the verdict in the light of that evidence. But on a review of the commissioners' report in a condemnation proceeding the court, from the necessity of the case, must hear evidence, because it has not before it the evidence and facts which influenced the commissioners."

■ If the question is still open, it is difficult to accept the theory that the report is not competent in evidence. The power given by the charter to the court and the duty of the court as there laid down is to "review the report." (See section 7, article XXI, set out supra.) The court may approve the report. It may reject the report and appoint

other commissioners who shall make new assessments. The court itself may assess benefits anew. Certainly the court must have the report before it if it is to approve it or reject it or make new findings of benefits in lieu of those reported. Whether the report constitutes prima facie or any proof of the benefits stated, it is certainly competent in evidence as the very subject-matter to be reviewed.

■ In any event there was no prejudicial error in the admission of the report here. The District Judge in his opinion said 3 F. Supp. 308:

"The report of the commissioners was introduced in evidence, but the court has not attached probative value to the finding of the commissioners, but has treated the case as a proceeding before the court in the first instance. In other words, the hearing has been considered as a trial de novo, which, as we understand it, is in accordance with the view of the Supreme Court of Missouri in such cases."

The appellant contends that notwithstanding what the District Judge said, nevertheless he must have been influenced by and have given probative value to the findings of the commissioners since as to several items of appellant's property the benefits assessed by the court were identical with those assessed by the commissioners. The contention is sufficiently answered by saying that in those instances the court accepted as true the same testimony which supported the findings of the commissioners. It is not strange that the city, which sought the approval of the report, should offer testimony supporting the findings reported nor that in certain instances the court should find in accordance with that testimony.

Appellant Was Not Prejudiced in the Evidence as to Benefits.

3. Following the introduction in evidence of the report of the commissioners the city proceeded to attempt to show by the testimony of expert witnesses what benefits had been received by each item of appellant's property. The first witness called was one Isaac H. Hedges. Taking up with him the several items of property involved he was asked as to each what special benefits it had received by reason of the Market street improvement. Thus he was asked—

"Q. Well, what, in your opinion, Mr. Hedges, are the benefits, if any, by reason of this Market Street improvement, of the land described in item 2275 of the Commissioners'

report, derived as of May 18, 1922, that is, the special benefits?"

Objection was made to this question on the ground, among others, that it did not state what should be taken into consideration in determining special benefits. The objection was overruled. We think this was error. Afterward, when the same question was asked another of the city's expert witnesses, the same objection was sustained.

■ Speaking generally, the measure of such benefits as might be assessed in a case of this kind is the difference in market value of the property involved before and after the enactment of the improvement ordinance. Commissioners, etc., v. Railway Company, 257 U. S. 547, 554, 42 S. Ct. 250, 66 L. Ed. 364. To ask a witness what special benefit a parcel of property has received, without stating to him what standard is to be used in measuring that benefit obviously is to call for a conclusion which may or may not have a correct fact basis. A conclusion of that character is not competent evidence.

■ The whole testimony of two of the city's three expert witnesses as to benefits was in answer to questions of the same character as that instanced and over the same objection. When the third and last of the city's witnesses was called, however, the question was reframed so as to state the legal standard of measurement. And since this witness gave testimony as to every item of property of appellant and so supplied a basis of competent evidence for the court's findings, we think that such error as was committed in this connection did not prejudice appellant.

Validity of Ordinances.

4. The reception in evidence of the ordinance which provided for the proposed street improvement and for the institution of proceedings in the circuit court (and also of a supplemental and amendatory ordinance) is assigned as error. The objection to the ordinances when they were offered was thus put—

"The exceptor objects to these ordinances because they do not confer authority for the institution and prosecution of a suit for the assessment of benefits against the property of this exceptor * * * (and because they) do not create a benefit district for the assessment of benefits and do not authorize the creation of such benefit district."

■ We do not consider that there was merit in these objections. The theory of them is that an ordinance of this character must itself set out the benefit district rather than that

that district shall be fixed by commissioners appointed by the circuit court. As the basis for this contention reliance is placed on article XXII of the charter of the city of St. Louis. That article is entitled, "Public Work," and provides in section 1 that no ordinance for public work or improvement of any kind or repairs thereof shall be adopted unless prepared and recommended by the board of public service with an estimate of the cost indorsed thereon. It provides in section 3 that before the board of public service shall recommend an ordinance for any public work or improvement, etc., the board of aldermen, on recommendation of the board of public service, shall establish a benefit or taxing district against the property in which it is proposed to assess benefits. Quite clearly, however, article XXII of the charter has no application here. It is article XXI, entitled "Condemnation," which governs. Without setting out that article it is enough to say that the ordinances here involved fully conform with all of its requirements and that the procedure adopted in this case is such as that article of the charter contemplates. That article of the charter expressly provides that the commissioners appointed by the circuit court to assess damages and benefits shall "fix the benefit or taxing district." The very language of the charter negatives the contention that the benefit district should be fixed in the ordinance providing for the improvement.

5. Another contention made by the appellant properly is next considered. It too goes to the validity of the ordinances involved.

The charter provision under which the ordinances were adopted requires as a prerequisite that they shall have been "recommended by the Board of Public Service." The contention is that there was no proof in this case that the board of public service recommended these ordinances. Hence, it is argued, the whole proceeding was without validity and is void.

The city's verified petition alleged that the ordinance had been duly enacted by the board of aldermen "on recommendation thereof in writing by the Board of Public Service of said city." The court made a finding of fact that "the ordinances were respectively duly enacted by the Board of Aldermen in the City of St. Louis upon the recommendation thereof in writing by the Board of Public Service." There was not, however, any specific proof offered by the city that the board of public service had made any such recommendation. On the other hand, the appellant offered no proof that there had not been such a recommendation as the charter requires. Moreover, at the trial, the question of noncompliance with this charter prerequisite never was raised by the appellant. The question was not raised by the appellant in its exceptions to the report of the commissioners. It was not raised in connection with appellant's objections to the introduction of the ordinances in evidence. It was not raised by any request of the appellant for a finding of fact or declaration of law. It was not raised in any exceptions saved to the findings of fact and declarations of law made by the court. It is not specifically raised in any of the assignments of error. So far as the record of this case discloses, the first reference to this subject is made by the appellant in its brief filed in this court.

■ Undoubtedly it was incumbent on the city to plead and prove that these ordinances had been recommended by the board of public service. The Supreme Court of Missouri has held definitely that no presumption of compliance with such a prerequisite goes with proof of such an ordinance as these. The precise question was determined in City of St. Louis v. Gleason, 89 Mo. 67, 14 S. W. 768.

The case of City of St. Louis v. Gleason came to the Supreme Court on appeal from the St. Louis Court of Appeals. 15 Mo. App. 25. A condemnation ordinance which had been passed by the municipal assembly of St. Louis was in question. The charter of St. Louis then provided that such an ordinance could be enacted "either on the unanimous recommendation of the board of public improvements, or on the petition of the owners of the major portion of the ground fronting thereon." The petition filed in the circuit court by the city did not recite that the ordinance involved had been passed on such recommendation or petition. Exceptions to the report of the commissioners who had been appointed by the circuit court pursuant to the ordinances were overruled. The contention in the Court of Appeals was that the circuit court had no jurisdiction to appoint commissioners since the petition filed in that court did not allege the recommendation of the board of public improvements or the petition of owners of property. The Court of Appeals ruled that the ordinance was presumptively valid, that it was not necessary for the city affirmatively to show that conditions precedent to its validity had taken place. The Supreme Court reversed this ruling of the Court of Appeals and held—

"In the case at bar the assembly had no power to act, no jurisdiction over the sub-

ject-matter, until directed to act by the board of public improvements or the owners of a major portion of the ground fronting on the proposed street. Until such action was taken by the board of public works, or the owners of the ground, there was no authority in the assembly to pass the ordinance. * * * Condemnation proceedings, if regular, deprive the owner of his property without his consent. The law authorizing them should be strictly construed, and every prerequisite to the exercise of the jurisdiction observed. When the power to condemn is vested in one tribunal, it cannot be exercised by another, and when two or more are required to act conjointly, less than the whole number cannot condemn."

This decision of the Supreme Court declares the law in Missouri. See, also, State ex rel. v. City of St. Louis, 161 Mo. 371, 61 S. W. 658, American Tobacco Company v. Missouri Pac. R. Co., 247 Mo. 374, 157 S. W. 502. The city's petition in such a case as this must allege compliance with the prerequisites to the enactment of ordinances like these. If such prerequisites must be pleaded they must be proved. It does not follow, however, that failure of proof in this regard justifies a reversal of the judgment in this case.

No question of jurisdiction is involved here as in City of St. Louis v. Gleason. In the first place, the jurisdiction of the District Court is conceded by appellant. In the second place, its jurisdiction, so far as this question is concerned, depends upon the allegations of the petition as to compliance with charter prerequisites. Those allegations are present in the petition in this case. Appellant's contention goes to the validity of the ordinances. If the recommendation of the board of public service was not made to the board of aldermen, then the ordinances which the board of aldermen enacted were invalid. The appellant should have objected to their introduction on that ground. It objected on other grounds, but on no such ground as that now urged. The attention of the District Court was not called to this ground of objection and thereby this objection was waived by the appellant. Appellant cannot now be heard to urge an objection which was not called to the attention of the trial court either when the ordinances were offered in evidence or at any other time. If, in fact, these ordinances were not recommended by the board of public improvement, the appellant owed it to the District Court to urge that objection during the trial or in some way to raise the point then. It cannot raise it for the first

time in its brief and on oral argument in this court. Frey & Son, Inc., v. Cudahy Packing Co., 256 U. S. 208, 41 S. Ct. 451, 65 L. Ed. 892; United States v. U. S. Fidelity & Guaranty Company, 236 U. S. 512, 35 S. Ct. 298, 59 L. Ed. 696; Robinson & Co. v. Belt, 187 U. S. 41, 23 S. Ct. 16, 47 L. Ed. 65.

### Charter Words, "Especially Benefited," Construed.

6. Still another of appellant's contentions goes to the whole judgment. It is thus stated:

"Appellant's property received no special benefit and under the provisions of the city charter property is not subject to assessment unless it is specially benefited and it is not specially benefited unless it has a frontage on the improvement."

It is true that the charter in its references to assessments of benefits, uses the words (the text is set out in the margin[3]) "especially benefited" and "specially benefited." Seizing upon these words and giving to them a significance limited as similar words have been limited in various opinions of state and federal courts, the appellant argues that its properties could not have been specially benefited within the meaning of the charter and that only properties fronting on an improvement (appellant's properties do not front on the improvement here) can be specially benefited.

The appellant and city urge different constructions of the words "especially benefited" and "specially benefited" as used in the charter. The appellant asserts that these words are to be construed to have the same meaning as like words were construed in United States v. River Rouge Improvement Company, 269 U. S. 411, 46 S. Ct. 144, 146, 70 L. Ed. 339, where the subject of special benefits resulting from the widening of a river was under consideration by the Supreme Court. That court said:

---

[3] Section 4. It shall be the duty of the commissioners * * * to ascertain the value of the property proposed to be taken and the actual damage done to private property. * * * For the payment of all such damages the commissioners shall assess against all the lots or parcels of property or interests therein especially benefited by the proposed public work or improvement, separately, and in the name of the several owners thereof, the amount that each such lot or parcel of property or interest therein so assessed shall be specially benefited by the proposed public work or improvement, and against the city the balance of the damages over and above the aforesaid special benefits assessed: provided, that in the opening of an alley there shall be assessed against the lots or parcels in the blocks in which the alley is opened benefits sufficient to pay all damages.

"We are of opinion that an increase in the value of the remaining portion of any parcel of land caused by its frontage on the widened river, carrying a right of immediate access to and use of the improved stream, would constitute a special and direct benefit within the meaning of the statute, as distinguished from a benefit common to all the lands in the vicinity. * * * This is in accordance with the rule recognized by this court and established by the weight of authority in the state courts in reference to special benefits to lands abutting upon a new or widened street. * * * 'The kind of benefit, which is not allowed to be estimated * * * is that which comes from sharing in the common advantage and convenience of increased public facilities, and the general advance in value of real estate in the vicinity by reason thereof. * * * The advantages of more convenient access to the particular lot of land in question, and of having a front upon a more desirable avenue, are direct benefits to that lot, giving it increased value in itself. * * * Such advantages are direct and special. * * *','"

The city gives a much broader construction to the words in question than does appellant. It contends that, within the meaning of the charter, special benefits are the actual benefits which the lot or parcel derives by reason of the projected improvement including advances in market values.

It does not appear that the Supreme Court of Missouri ever directly has construed these charter words. But it is quite clear to us that they have no such limited meaning as that upon which appellant insists.

What was considered in United States v. River Rouge Company, supra, and in other cases cited by appellant in this connection were special benefits which might be offset against damages where private property is taken for public use in the exercise of eminent domain. There courts were dealing with constitutional provisions prohibiting the taking and damaging of private property for public use without just compensation. Necessarily there only properties actually damaged (hence taken by or adjacent to the improvement) were involved. In such cases the courts have said that an increase in the market value of a given parcel of property which is a part of an increase resulting to all property in the vicinity of an improvement by reason of the improvement and which is not peculiar to the particular parcel and resulting from a direct and immediate advantage it has received, is not to be offset as against and deducted from damages. The reason is that "to make such a deduction would be to require the landowner whose property is taken in part to liquidate his damages by contributing his share of the benefits which inure to the public as a whole" (including) "those accruing to the owners of property in a neighborhood or vicinity generally." State ex rel. Highway Commission v. Jones, 321 Mo. 1154, 1159, 15 S.W.(2d) 338, 340.

But, benefits which will support the laying of a special tax (and it is that which is involved here) are more inclusive than those which may be offset against damages where particular property is taken under the power of eminent domain. They include all increases in market value resulting from the improvement in a benefit district whose boundaries are fixed, either by the Legislature or by some administrative agency of the state which has been invested with the power of determining those boundaries. Lands included within such a benefit district indeed receive, except as to those which are immediately adjoining the improvement, only general benefits in the sense in which general benefits are defined in the cases having to do with the taking and damaging of property in the exercise of the power of eminent domain. In a broader sense, however, all lands in such a benefit district whose market value has been increased by reason of the improvement are especially benefited, that is, they are benefited as distinguished from other lands not included in the benefit district and whose market values have not been increased by reason of the improvement. It is in this broader sense that the words "especially benefited" and "specially benefited" are used in the charter of St. Louis. "Special assessments," said the Supreme Court in Illinois Central Railroad v. Decatur, 147 U. S. 190, 13 S. Ct. 293, 294, 37 L. Ed. 132, "are made upon the assumption that a portion of the community is to be especially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds."

That the charter words are not used in the narrow sense urged by the appellant is perfectly apparent from the context in which they are employed. The charter provides for a benefit district whose boundaries are to be fixed by the commissioners. There is no limitation of that district to properties fronting on the improvement made. Such a limitation is inferentially negatived indeed by the very language of the charter which provides that "when the commissioners both assess benefits and allow damages against any

one property owner, they shall deduct the lesser from the greater." This implies that in many instances benefits will be assessed where no damages have been allowed because no property has been taken or damaged. Again, such a limitation inferentially is negatived by the express provision that when the improvement is the opening of an alley the benefits shall be assessed against the lots or parcels in the blocks in which the alley is opened. The limitation of benefits even in such a case is not to properties actually fronting on the improvement, but to the blocks in which the improvement has been made. The necessary implication is that even this limitation (and it is a lesser limitation than the appellant urges) does not exist with respect to improvements other than alleys.

While there has been no direct construction by the Supreme Court of Missouri of the charter words here considered, that court, whenever it has had these or similar charter provisions before it, has assumed that they were synonymous with actual benefits in the sense that they included any increases in market value resulting from an improvement made or contemplated. Schwab v. St. Louis, 310 Mo. 116, 274 S. W. 1058; City of St. Louis v. Buss, 159 Mo. 9, 59 S. W. 969; City of St. Louis v. Ranken, 96 Mo. 497, 9 S. W. 910.

Charter Governs, General Statute Does Not.

7. Finally, as an afterthought (in no connection was the point made in the District Court and it is first suggested here in a supplemental brief filed by appellant), appellant assails article XXI of the charter of St. Louis under which the city proceeded in this case. That article, as we have seen, authorizes commissioners appointed by the circuit court to lay out a benefit or taxing district. The procedure in this instance was as provided for in that article but appellant says that so much of the article as authorized commissioners to lay out the benefit or taxing district is inconsistent with section 7222, R. S. Mo. 1929 (Mo. St. Ann. § 7222) which provides that:

"In all cases where the proper authorities in any city in this state have graded or regraded, or may hereafter grade or change the grade or lines of any street or alley, or in any way alter or enlarge the same, or construct any public improvement, thereby causing damage to private property for public use, within the meaning of section 21 of article II of the state Constitution, without the consent of the owner of such property * * * the circuit court having jurisdiction over the territory embraced in such city * * * on application by petition * * * by the city authorities * * * shall appoint three disinterested freeholders of such city. * * * The city authorities shall, before the filing of such petition, define by ordinance the limits within which private property is deemed benefited. * * *"

Section 22 of article 9 of the Constitution of Missouri, under which the present charter of that city was adopted, provides that:

"The law-making authorities of such city may order an election by the qualified voters of the city of a board of thirteen freeholders of such city to prepare a new charter for such city, which said charter shall be in harmony with and subject to the Constitution and laws of the State."

Section 23 of article 9 of the Constitution provides:

"Such charter and amendments shall always be in harmony with and subject to the Constitution and laws of Missouri, except only that provision may be made for the graduation of the rate of taxation for city purposes in the portions of the city which are added thereto by the proposed enlargement of its boundaries."

Section 25 of article 9 of the Constitution provides:

"Nowithstanding the provisions of this article, the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties of this State."

Appellant's point is that the charter is void to the extent that it conflicts with any general statute of the state applicable to St. Louis and that article XXI does conflict with section 7222 since the former provides that the benefit district shall be fixed by commissioners and the latter provides that the benefit district shall be defined by ordinance before the institution of court proceedings.

There are two sufficient reasons which warrant us in ruling that this point cannot avail appellant. The first is that appellant cannot be heard to urge the unconstitutionality of article XXI of the charter for the first time in this court. The general rule is that such a question if not raised in the trial court will not be considered on appeal. 3 C. J. 710; Southwestern Oil Co. v. Texas, 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; Chesapeake, etc., R. Co. v. McDonald, 214 U. S. 191, 29 S. Ct. 546, 53 L. Ed. 963; Cox v. Texas, 202 U. S. 446, 26 S. Ct. 671, 50 L. Ed. 1099.

The second reason is that while the Constitution of Missouri requires that the charter of St. Louis shall be in harmony with and subject to the laws of the state, the Supreme Court of Missouri has construed that provision as not requiring conformity with state laws in mere matters of detail. Tremayne v. City of St. Louis, 320 Mo. 120, 134, 6 S.W.(2d) 935. Even if section 7222 applies at all (which is gravely to be doubted) to an improvement of the nature of the establishment of a new public highway, the condemnation of property therefor and the assessment of benefits for the payment of damages incident thereto, the differences between the procedure provided for in section 7222, applicable to all cities, towns, and villages in the state, and article XXI of the charter are mere differences in detail such as might well exist between a general law and a law affecting only a great city.

### Railway Property Subject To Benefit Assessments.

8. Passing from the contentions of appellant which go to the validity of the whole proceeding, we come to its final contention, that the assessments of benefits as to certain parcels of its property are void as unreasonable and arbitrary, and hence violative of the due process clause of the Fourteenth Amendment. No contention is made of any discrimination against appellant and nothing in the record indicates that benefits were assessed upon appellant's property upon any other basis than that upon which they were assessed against the properties of other owners in the benefit or taxing district.[4]

The contention is most forceful in so far as it concerns the benefits assessed against forty-eight of the eighty-two parcels of appellant's property, as to which the District Court made a finding of fact that they were exclusively used by appellant for railroad purposes and that the properties to the north and south of them were used for railroad purposes by other railroad companies, notwithstanding which, however, the court found they were benefited and in what amounts.

It is not suggested that the findings and assessments as to these parcels were arbitrary in the sense that they were not based on any evidence for there was positive testimony supporting each finding and assessment. The argument really is that the witnesses for the city who furnished the evidence supporting the court's findings testified as to benefits to appellant's properties without regard to the uses to which they were put. They considered them just as they would unoccupied lands and gave their opinions as to what increases in market values they had received when viewed in that light and not when viewed as properties devoted exclusively to railroad purposes. This, says appellant, is an erroneous theory. Lands used exclusively for railroad purposes, it is urged, cannot at all be specially benefited and hence any special benefit assessed against them is arbitrary. The contention is put in these words: "A railway company has no power or right to abandon its railroad or devote its right of way to some other use. Property used solely for railroad purposes cannot derive an increase in market value by reason of a municipal improvement and is not subject to a tax for special benefits."

Cases are cited by appellant which support this claimed rule of law. City of Barre v. Railway Company, 97 Vt. 398, 123 A. 427, 429, 37 A. L. R. 207; Atchison, Topeka & Santa Fe Railway Co. v. San Diego (9 C. C. A.) 45 F.(2d) 11; New York Bay Railway Company v. Newark, 82 N. J. Law, 591, 83 A. 962; Georgia R. & Bkg. Company v. Decatur, 137 Ga. 537, 73 S. E. 830, 40 L. R. A. (N. S.) 935; New Castle v. Pittsburgh, etc., Railway Company, 72 Pa. Super. Ct. 135; In re New York City, 127 App. Div. 672, 111 N. Y. S. 916. None of them is binding on this court but they deserve consideration to the end that the reasoning supporting the conclusion announced may be ascertained and given such weight as it deserves.[5] One of the leading cases cited and the best reasoned of all of them is City of Barre v. Railway Company (Supreme Court

---

[4] It is indeed contended by the appellant that there was discrimination against all of the property owners assessed with benefits for that their properties lay in a district within the district originally fixed by the commissioners as a benefit district, whereas properties outside the more limited district and within the original benefit district were not assessed at all. There is no merit in this contention. City of St. Louis v. Brown et al., 155 Mo. 545, 559, 56 S. W. 298.

[5] Of the cases cited in support of appellant's theory some turn on local statutes which are construed to exempt railroad rights of way and other railroad property from special assessments. Missouri has no such statute. On the contrary it is provided in section 7216, R. S. Mo. 1929 (Mo. St. Ann. § 7216), that:

"All real property, including rights of way, yards and depot grounds, situated within the corporate limits of any incorporated city, town or village in this state, of any railroad company which now owns or operates, or which may hereafter own or operate, any railroad or part of a railroad within the corporate limits of any such city, town or village, shall be subject to special assessments for public improvements made by any such city, town or village, in the same manner and to the same extent in all respects as the real property of any other person or corporation therein."

of Vermont). It is said in the opinion in that case that there is a distinction between lands generally in a benefit district and those owned by a railway company and devoted exclusively to railway purposes. The distinction is thus justified:

"* * * The rule for ascertaining whether * * * land [permanently devoted to railroad purposes] is benefited by the improvement is not the same as when land is so held that the owner may change the use at pleasure. Then the benefits are not to be determined alone by the increased value of the property for its present use, but its probable future use may be considered. But when * * * the law has devoted the property permanently to a particular use, the rule is that it can only be benefited to the extent that its fitness for such use is increased. * * * The true measure of benefits is the increased value for the special use to which it is by law restricted. The principle deducible from the cases is that, while there may be unusual conditions under which a railroad right of way can be benefited by local improvements, as a general rule it is apparent as a matter of law that it cannot be. * * *

"The sound reason upon which this rule rests * * * is that land acquired under the legislative sanction that implies its permanent devotion to a public use cannot without a violation of public use have a market for any other purpose, and hence such violation will not be presumed; such land has in legal contemplation no market value to be enhanced. * * *"

Analysis of this reasoning should be preceded by a statement of the principles underlying and supporting special assessments.

The theory of special assessment taxation for defraying in whole or in part the cost of a public improvement is that what is exacted from the owner of a particular parcel of property by a benefit assessment is returned to him in the increased value which results to his property by reason of the improvement. Illinois Central Railroad Company v. Decatur, 147 U. S. 190, 13 S. Ct. 293, 37 L. Ed. 132. Thus a boulevard is constructed through a section of a city. Because of that fact the market values of property in its vicinity go up. What extent of territory in the vicinity of the improvement has thus been affected may be determined, not exactly indeed, but with some approximation of accuracy, and so a benefit district is established. Within that district one owner, A, has a parcel of land which is now used by him for res-

idential purposes, B has a parcel of the same size equally distant from the new boulevard, now used by him for merchandising purposes (he has a store building on it which he rents), C has a like parcel which is entirely unimproved. Each is assessed, let us say, $100, upon the theory that each has received a value of $100. Of course none has received that value in the form of money paid to him by the city. The city does not collect $100 with one hand and pay it back with the other in the same form in which it was collected. The theory is that each has received an increase in the market value of his property in the amount of $100.

The theory of benefits would be a meaningless fiction if there was no way in which the property owner could realize on the increase in value that in theory he has received. But, in the supposed case, the three property owners A, B, and C, can realize on their benefits. Each can sell his property and so have in money the increase in value he has received. If he does not desire to sell and does not sell, nevertheless he has the value; he merely retains it in the form it has come to him. Holding it in that form he may or may not earn a return upon it. For illustration, in the case of B, on whose parcel is the store building which he rents, the value of the property rented enters into the determination of the rent charged for it. If the value of B's property has been increased, he may and will charge and receive a higher rent. In the case of C, whose parcel is unimproved and is devoted to no present use, who holds his property as an investment, his investment has been increased and he has that increase in value; he can realize on it when he will, either by selling it or by devoting it to some use the profits of which will be influenced by its value, including any increase in value it has received.

It is true that a particular parcel of property may be devoted to such a use as that it will be benefited by a public improvement on account of that special use to a greater extent than property which is devoted to some other use or to no use at all. But to the extent that the market value of land in a given benefit district has been generally increased by reason of a public improvement, any parcel of the land participates in that benefit wholly without regard to what use it is put and, therefore, wholly without regard to whether the use to which it is put is permanent or temporary and may or may not be changed. It is true, of course, that if a given parcel, for some reason, cannot have a market

value it cannot be benefited by an enhancement of market value.

■■ ■■■ ■■■ distinction drawn in the case of City of Barre between lands generally and land devoted exclusively to railway purposes is predicated upon the assumption that as to lands generally benefits are assessed with reference not only to the present but probable future use of the land and the reasoning is that since land devoted exclusively to railway purposes cannot have any other probable future use, therefore only benefits with reference to the present use may be considered. The assumption, it seems to us, is an erroneous one. Benefits, speaking generally, are not assessed with reference to the present or probable future use, but with reference to the increase in market value which lands have by reason of an improvement.

■■■ There is another error, so we think, in the opinion in the case of City of Barre. It is stated in that case that "the sound reason upon which [the] rule rests * * * is that land [devoted to railway purposes] cannot * * * have a market for any other purpose" and that it "has in legal contemplation no market value to be enhanced." To say that property devoted exclusively to railway purposes, as a railway right of way, has no market value because the sale of it for other than railway purposes may be prevented, is a non sequitur. It can be sold by one railway company to another railway company and to that limited extent at least can be placed and sold on the market. That it can be used for one purpose only does not indicate that it cannot have a market value. A farm in an agricultural section in the nature of things can be used only for agricultural purposes, but no one would say that on that account it cannot have a market value and a market value which may be enhanced by a public improvement in its vicinity.

Even if a railway right of way could not be sold to another railway company to be used by it for railway purposes, still it cannot accurately be said that the value of the right of way may not be enhanced by an improvement in its vicinity and that the railway company can not realize that benefit.

■■■ Realization of such a benefit certainly does not depend on the discontinuance of railway operations or the abandonment of a railway use of property. If that is true, then no significance attaches to the fact that such discontinuance or abandonment can be effected only with the consent of public authorities.

■■ The number of passengers and the quantity of freight that a railway company carries are not the only factors which affect its revenues. A public improvement which directly increases the railway's business is not the only improvement which may effect for it an increase in its earnings. The value of the property it devotes to railway purposes is an important factor in the determination of what is a fair return to it in earnings and, therefore, of the rates it may charge for services. It is not to be doubted that if by reason of improvements the value of lands on both sides a railroad right of way, for illustration, have been doubled the railroad company would insist, in any revaluation of its property by rate making authorities, that it should have the benefit of a like increase. It would be entitled to so insist. Minnesota Rate Case, 230 U. S. 352, 455, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18. It cannot be said, therefore, that an improvement which generally in a given district raises the value of property does not benefit railroad property in that district even if that property is and always will be devoted exclusively to railway purposes.

Moreover, because a given parcel of land is devoted exclusively now to such a railway purpose (e. g., carrying of tracks) as will not in any way be benefited by an improvement which will make that parcel more accessible or more easily accessible to the patrons of the railroad, it by no means follows that hereafter it may not be devoted to another purpose (yet still a railway purpose) vastly promoted by that improvement in accessibility. "No one can say," said the Supreme Court in Louisville, etc., R. Co. v. Barber Asphalt Paving Company, 197 U. S. 430, 25 S. Ct. 466, 468, 49 L. Ed. 819, "that changes might not make a station desirable at this point; in which case the advantages of a paved street could not be denied."

The cases in which the courts have set aside or have restrained the collection of benefits as to railway properties lying within a benefit district regularly established almost always, if not always, have been cases in which gross discrimination has been proved. The clear implication arises from those cases that if the railway property had been assessed upon the same basis as other properties in the benefit or taxing district, then no complaint would have merit. Kansas City Southern Railway Company et al. v. Improvement District, 256 U. S. 659, 41 S. Ct. 604, 605, 65 L. Ed. 1151, is an illustration. There, in an agricultural district, a gravel

road was to be constructed. In the benefit district created were farming lands and the right of way of the Kansas City Southern Railway Company. The farming lands were assessed upon the basis of area (so many dollars per acre) the railway right of way was assessed upon a wholly different and quite indefinite basis, with the result that it was charged for the 11.2 miles of gravel road to be constructed, at the rate of $7,000 per mile of its right of way, a total of $67,900. Holding that this was unwarranted discrimination, the court said:

"Obviously, the railroad companies have not been treated like individual owners, and we think the discrimination so palpable and arbitrary as to amount to a denial of the equal protection of the law. Benefits from local improvements must be estimated upon contiguous property according to some standard which will probably produce approximately correct general results. * * * Classification, of course, is permissible, but we can find no adequate reason for what has been attempted in the present case. * * * It is doubtful whether any very substantial appreciation in value of the railroad property within the district will result from the improvements; and very clearly it cannot be taxed upon some fanciful view of future earnings and distributed values, while all other property is assessed solely according to area and position. Railroad property may not be burdened for local improvements upon a basis so wholly different from that used for ascertaining the contribution demanded of individual owners as necessarily to produce manifest inequality. Equal protection of the law must be extended to all."

It is apparent from this language that if the assessment upon the railroad right of way had been on the same basis as that upon which other lands in the benefit district had been assessed, that is to say, at so much per acre, it would not have been held that the assessment either was discriminatory or arbitrary. For then the railroad right of way would have been taxed on the same basis as other property in accordance with the same standard of assessment and, therefore, not arbitrarily nor with discrimination.

A review of the federal cases does not reveal that in any of them, where there has been no showing of discrimination, where properties involved are included in the benefit district which has been fixed by the taxing authorities charged with that duty, where those authorities have determined that a given property has been benefited, the assessment has been set aside on the ground that the properties were not at all benefited and could not be benefited.

We think that the essential idea in the contention of appellant, "that property used solely for railroad purposes cannot derive an increase in market value by reason of a municipal improvement, and is not subject to a tax for special benefits," has been rejected both by the Supreme Court of the United States and by the Supreme Court of Missouri.

In Louisville & Nashville R. R. Co. v. Barber Asphalt Paving Company, supra, the same contention was made, almost in the identical words which appellant employs here. There it was argued by the railroad company that "the property involved is peculiar; it belongs to a class by itself; it is a railway right of way and is not, in fact, cannot be benefited and hence should not be assessed." As to that the Supreme Court, speaking through Mr. Justice Holmes, said:

"The plea plainly means that the improvement will not benefit the lot, because the lot is occupied for railroad purposes and will continue so to be occupied. * * * That, apart from the specific use to which this land is devoted, land in a good-sized city generally will get a benefit from having the streets about it paved, and that this benefit generally will be more than the cost, are propositions which; * * * a legislature is warranted in adopting. But, if so, we are of opinion that the legislature is warranted in going one step further and saying that on the question of benefit or no benefit the land shall be considered simply in its general relations and apart from its particular use. * * * On the question of benefits the present use is simply a prognostic, and the plea of prophecy. If an occupant could not escape by professing his desire for solitude and silence, the legislature may make a similar desire fortified by structures equally ineffective. It may say that it is enough that the land could be turned to purposes for which the paving would increase its value."

Appellant in its brief attempts to distinguish the case cited and it is true that the fact situation in it is not identical with that here. But the language of the Supreme Court does squarely controvert the essential idea of the contention that a benefit assessment against railroad property can be made only in consideration of its particular use.

Similarly the theory of appellant's contention is squarely met by the Supreme Court of Missouri in Heman Construction Company v. Wabash Railway Company, 206 Mo. 172,

104 S. W. 67, 70, 12 L. R. A. (N. S.) 112, 121 Am. St. Rep. 649, 12 Ann. Cas. 630, in which the court said, quoting from the opinion in Northern Indiana Railroad Co. v. Connelly, 10 Ohio St. 159:

"If railroad tracks are taxable for general purposes, it is difficult to perceive why they should not be subject also to special taxes or assessments. The company, to advance its own interests, has seen fit to appropriate to its use ground within the corporate limits of the city * * * and over which that city had the power of making assessments to defray the expenses of local improvements, and why should not the company be held to have taken it cum onere? A citizen would scarcely claim exemption because he had devoted his lot to uses which the improvement could not in any way advance, and we see no good reason why a railroad company should be permitted to do so."

Among other cases supporting the view that a railway right of way may be specially assessed for local improvements as other properties are assessed are the following: Choctaw, etc., R. Co. v. Mackey, 256 U. S. 531, 539, 41 S. Ct. 582, 65 L. Ed. 1076; Mackey v. Choctaw, etc., R. Co. (8 C. C. A.) 261 F. 342, 344; St. Louis, etc., R. Co. v. Tulsa, Okl. (8 C. C. A.) 15 F.(2d) 960, 962, 964; Carolina, etc., R. Co. v. Clover, S. C. (4 C. C. A.) 46 F.(2d) 395, 397; In re Southern R. Co. Paving Assessment, 196 N. C. 756, 147 S. E. 301, 304; Cowart et al. v. Union Paving Company et al. (Cal. Sup.) 14 P.(2d) 764, 767; Syracuse R. Co. v. Van Amburgh, 223 App. Div. 485, 229 N. Y. S. 10, 13; Johnson City v. Carolina, etc., R. Co., 163 Tenn. 283, 43 S.W.(2d) 215, 216; M., K. & T. R. Co. v. Eufaula, 83 Okl. 263, 201 P. 808, 809; Minneapolis, etc., R. Co. v. Minot, 51 N. D. 313, 199 N. W. 875, 878, 37 A. L. R. 211; Chicago R. Co. v. Churdan, 196 Iowa, 1057, 195 N. W. 996, 997; Baltimore, etc., R. Co. v. Oak Hill, 25 Ohio App. 301, 157 N. E. 817, 822; Haynes, etc., Co. v. Kokomo, 186 Ind. 9, 114 N. E. 758, 760; Masters et al. v. Alger County, 214 Mich. 93, 182 N. W. 424, 426; Chicago, etc., R. Co. v. Poland, 54 Mont. 497, 172 P. 541.

From the cases cited and from what seems to us to be the sound reason of the matter we conclude that the particular assessments complained of were not arbitrary and that the judgment of the District Court as to them cannot be reversed on that ground.

### General Conclusion.

9. Upon the whole case our conclusion is that no prejudicial error has been shown.

The proceedings were in conformity with the applicable law. The findings that various parcels of appellant's property were benefited and as to the amounts of those benefits are supported by competent evidence. In no instance was the benefit assessed arbitrary or discriminatory. Our inquiry goes no further. It is not for this court, having resolved the questions for its determination against appellant, to weigh the evidence as to the amount of benefit received by any given parcel of appellant's property and to rule that as to that parcel the assessment should have been other than that determined by the District Court.

The judgment of the District Court should be and is affirmed.